DANIEL DOBBINS, PLAINTIFF IN ERROR, *v.* THE COMMISSIONERS OF ERIE. COUNTY, DEFENDANTS IN ERROR.

A captain of the United States revenue cutter, on the Erie station in Pennsylvania, was rated and assessed for county taxes, as an officer of the United States, for his office. Held, that he was not liable to be rated and assessed for his office under the United States, for county rates and levies.

The question presented in the case before the Courts of Pennsylvania, was whether the office of captain of the revenue cutter, of the United States was liable to be assessed for taxes, under the laws of Pennsylvania. The validity of the laws of Pennsylvania imposing such taxes, was in question in the case, on the ground that the laws were repugnant to the Constitution and laws of the United States; and the Court decided in favour of the validity of the law. The Supreme Court of the United States has jurisdiction on a writ of error in such a case.

Taxation is a sacred right, essential to the existence of government; an incident of sovereignty. The right of legislation is co-extensive with the incident, to attach it upon all persons and property within the jurisdiction of a state. But in our system, there are limitations upon that right. There is a concurrent right of legislation in the states, and the United States, except as both are restrained by the Constitution of the United States. Both are restrained by express prohibitions in the Constitution; and the states, by such as are reciprocally implied, when the exercise of the right by a state conflicts with the perfect execution of another sovereign power delegated to the United States. That occurs when taxation by a state acts upon the instruments, and emoluments, and persons which the United States may use and employ as necessary and proper means to execute their sovereign power. The government of the United States is supreme within its sphere of action. The means necessary and proper to carry into effect the powers in the Constitution are in Congress.

The compensation of an officer of the United States is fixed by a law made by Congress. It is in its exclusive discretion to declare what shall be given. It exercises the discretion, and fixes the amount; and confers upon the officer the right to receive it when it has been earned. Any law of a state imposing a tax upon the office, diminishing the recompense, is in conflict with the law of the United States which secures the allowance to the officer.

IN error to the Supreme Court of Pennsylvania.

In the Court of Common Pleas of Erie county, the plaintiff in error instituted an action against the commissioners of Erie county, the purpose of which was to have a decision on the right asserted by the commissioners of the county to assess and collect taxes on the office of the plaintiff, a citizen, and residing in

Erie county, Pennsylvania, a captain of the United States revenue cutter.

The following case was stated and submitted to the Court; either party to have the right to prosecute a writ of error.

"The plaintiff is and has been for the last eight years an officer of the United States, to wit, captain of the United States revenue cutter service; and ever since his appointment has been in service in command of the United States revenue cutter Erie, on the Erie station. He has been rated and assessed with county taxes for the last three years, to wit, 1835, 1836, and 1837, as such officer of the United States, for his office, as such, valued at five hundred dollars; which taxes so rated and assessed and paid by the plaintiff, amount to the sum of ten dollars and seventy-five cents.

The question submitted to the Court is, whether the plaintiff is liable to be rated and assessed for his office under the United States for county rates and levies; if he is, then judgment to be entered for the defendants; if not, then judgment to be entered for the plaintiff for the sum of ten dollars and seventy-five cents."

The Court of Common Pleas gave judgment for the plaintiff, and the case was removed to the Supreme Court of Pennsylvania; in which Court the judgment was reversed, and a judgment was entered for the commissioners of Erie county. The plaintiff, Daniel Dobbins, prosecuted this writ of error.

The case was submitted to the Court by Mr. Galbraith for the plaintiff, and by Mr. Penrose for the defendants, on printed arguments.

Mr. Galbraith, for the plaintiff in error.

The plaintiff was rated and assessed, under the construction given to the state law by the county officers, with a tax upon his office, created under a law of the United States. The act of Congress entitled "An act to regulate the collection of duties on imports and tonnage," passed March 2d, 1799, commencing at page 136 of the third volume, United States Laws, in its ninety-seventh section, empowers the President of the United States to cause revenue cutters to be built. The ninety-eighth section provides, "That there shall be to each of the said revenue cutters, one captain or master, and not more than three lieutenants or mates," &c.

Its ninety-ninth section provides, "That the officers of the said revenue cutters shall be appointed by the President of the United States, and shall respectively be deemed officers of the customs," &c., and prescribes their duties. Another act of Congress, passed the 2d March, 1799, same book, page 236, prescribes the compensation of the commissioned officers of the revenue cutters, including the captains. The plaintiff, as stated and admitted in the case, was a captain of the revenue cutter Erie, commissioned as prescribed by the act of Congress; and for that office, was rated and assessed under the state laws of the state of Pennsylvania, which may be found in 2 Parke and Johnston's Digest, at page 543; and which authorizes the assessment of a state or county tax upon "all offices and posts of profit." Does this mean "offices and posts of profit" with which the state or state laws have nothing to do in their creation? The Supreme Court of the state has decided in this case that it does, in 7 Watts's Rep. 513; and the question here presented is, whether or not that decision be correct. The Supreme Court of the state has decided in favour of the validity of the state law, in the construction given to it by the financial officers acting under the authority of the state; and therefore its decision is the subject of examination and revision here, as decided by this Court in Weston et al. v. City Council of Charleston, 2 Peters, 449.

The Supreme Court of Pennsylvania did not touch the point in question, or that presented in the case. No distinction is drawn between an office created by and under the state laws, and one which is the creature of the laws of the national government. It is simply decided that an office is the subject of the taxing powers of the state officers, under the laws of the state; which is not disputed, so far as relates to offices created by or controlled under state legislation. It is asked, if this office of captain of a revenue cutter appointed and commissioned under the authority of the acts of Congress, is not one of "the means employed by the government of the Union for the execution of its powers?" and if so, if it is not brought within the principle of the case of M'Culloch v. The State of Maryland, 4 Wheat. 316; 4 Cond. Rep. 466, 487; and again reviewed in 9 Wheat. 738; 5 Cond. Rep. 741? These cases clearly establish the principle, that the state sovereignty, the

state laws, and the acts of the state officers under its laws, can only extend to such things as exist by its own authority, or are introduced by its permission; and cannot extend to, or operate upon, an office created by the exclusive authority of the United States, and under the control of the laws of the Union alone; and which cannot be trammelled or interfered with by the state authorities.

Mr. Penrose for the defendants.

Captain Dobbins was a "taxable person," a citizen of Erie county, who enjoyed the privilege of a citizen, and the protection of the state government. He was clearly, as such, liable to taxation.

In determining the amount of the tax, the sovereign state had a right to say, arbitrarily, that he should pay so much, or, which is more just, to ascertain his income, and, by rating that, fix a tax proportioned to it. There is no doubt that the office or post which he held fell within the descriptive terms of the statute, terms to ascertain this. "rate" of the tax to be paid by the "taxable person,"—"all offices and posts of profit" without qualification.

The office of President Judge of a judicial district is within the act, notwithstanding the constitutional provision in regard to the salary of such officers. The Commissioners, &c. v. Chapman, 2 Rawle, 73.

Having inquired into the nature of the tax, and ascertained that the office or post held by the plaintiff in error falls within the descriptive terms of the statute, we come to the question. Is this statute invalid on the ground of its being repugnant to the Constitution or laws of the United States?

On this point we stop to inquire what is this power of taxation in a state, its nature, and extent.

"It is an incident of sovereignty, and is coextensive with that of which it is an incident." "It is called a sacred right." "It is admitted to be essential to the very existence of government." "It is so ample that it may be exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it." "There is no limit on the exercise of the

right, no guard against the abuse of the power; but in the structure of the government, and the discretion of the representative of the people." " It is not confined to the people and property of the state ; it may be exercised upon every object brought within its jurisdiction." " The power of legislation, and consequently of taxation, operates on all persons and property belonging to the body politic." " It is an original principle which has its foundation in society itself. It is granted by all, for the benefit of all." " However absolute the right of an individual may be, it is still in the nature of that right that it must bear a portion of the public burdens, and that portion must be determined by the legislature." M'Culloch v. The State of Maryland, 4 Wheat. 428 ; Providence Bank v. Billings and Pittman, 4 Peters, 563 ; Biddle v. The Commonwealth, 13 Serg. and Rawle, 409 ; Brown v. The State of Maryland, 12 Wheat. 419.

What are the limitations on this great prerogative power which it is admitted resides in the states, and does this case fall within any such limitation ? These limitations are either express or implied.

1. The express-limitation is found in the Constitution of the United States. Sec. 10, art. 1, of that instrument. " No state shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws." And there is a like prohibition to laying a duty on tonnage.

It was wisely judged, that no other limitation than this was necessary to secure the objects of government, and guard the citizen from oppression. He is the common constituent of the representative in the state; as well as the national government. Besides, by reserving to the general government the exclusive right of laying imposts or duties, Congress had an ample source of revenue, obviously the least oppressive to the people. For these imposts, though they be called in strictness an indirect tax, are rather a voluntary retribution by such as chose to purchase the imported article on which it is levied.

And although the power of direct taxation is not taken from, or rather is given to the general government to be used in those cases of national emergency, when a patriotic people will bear

almost any burden without a murmur, yet it is obvious, from the fact that the states are excluded from laying imposts, that this is the great source from which it was intended; except under extraordinary circumstances, that the general government should derive its revenue. And that the power of direct taxation, without any other limitation, should be left to the states. It is their natural, their only resort.

The limited purposes and objects of the state governments, immediately affecting the interests of the people will of course make them submit with cheerfulness to a direct tax for the support of such government; which they would not so readily endure, except in emergencies referred to, for the more onerous support of the national government.

The law of the state of Maryland, requiring an importer of foreign goods by bale or package, to take out and pay fifty dollars for a license to sell his goods, fell within this prohibition, and was decided to be repugnant and unconstitutional. Brown v. The State of Maryland, 12 Wheat. 419.

But even there it was held that the words of this prohibition "ought not to be pressed to their utmost extent." And when the importer has so acted on the thing imported, that it has become mixed up with the mass of property in the country, it has lost its distinctive character as an import, and is subject to taxation. And it is upon this principle that the law of the state of Pennsylvania imposing a duty on retail dealers was ruled to be in accordance with the Constitution. Biddle v. The Commonwealth, 13 Serg. and Rawle, 409.

Analogous to it is the principle on which the case of The Commissioners v. Chapman, 3 Rawle, 73, was ruled. In that case, the office of President Judge of a judicial district was decided to be within the act, notwithstanding the constitutional provision in regard to the salary of such officers. The opinion of the Court in that case is respectfully referred to.

2. The implied limitations on the power of taxation.

It is admitted that it was urged that, as the convention which formed the Constitution had imposed an express limitation, no other limitation could be established by inference. And this view was strongly fortified by the contemporaneous exposition of

the Federalist, the eminent authors of which asserted, "that the right of taxation in the states is sacred and inviolable," " with the sole exception of duties on imports and exports;" that " they retain the authority in the most absolute sense; and that an attempt on the part of the national government to abridge them in the exercise of it, would be a violent assumption of power, unwarranted by any article or clause of the Constitution."

It may be conceded that it was pressing too far the argument from this source, to contend for " that construction of the Constitution that would place within the reach of the states those measures which the government might adopt for the execution of its powers."    But it is a strong argument to show the high character, and wide extent of this power of taxation, and excludes the inference of any limitation upon it, which does not clearly fall within the essential principle of preventing a control by the states of such measures.

It was very apparent, that a like power of taxation in the general government created no such inference.    The authority is coequal.—Federalist.    A power conferred upon Congress does not, per se, exclude the states from the same power, unless it be in its nature exclusive.    5 Wheat. 48.    So the power of Congress to levy taxes does not exclude the states from a similar power. Gibbons v. Ogden, 9 Wheat. 201.

The great principle of these implied limitations is, that the states, in the exercise of the high prerogative power of taxation, should not be permitted to reach and control those measures necessary and proper for the execution of the powers vested by the Constitution in the government of the United States.    This is the ruling principle of all the cases.

It being judicially ascertained that Congress possessed the power to incorporate a bank of the United States.    It was constitutional because it was an instrument, and the means employed by the government of the Union for the execution of its powers.    The power to tax such instrument, and these means, is the power to destroy; and therefore the one is repugnant to the other.    M'Culloch v. State of Maryland, 4 Wheat. 428 ; Osburn v. United States Bank, 9 Wheat. 867.    It was on this principle that it was ruled, that " a tax imposed by a law of any state

of the United States, or under the authority of such a law on stock issued for loans made to the United States, is unconstitutional." The creation of the stock was a measure necessary and proper for the execution of the power " to borrow money on the credit of the United States." It was an instrument for the execution of that power. Weston and others v. The City Council of Charleston, 2 Peters, 449, 465. So neither can a state tax any other instrument employed by the government for the execution of its powers. It cannot tax the mail. It cannot tax the mint. It cannot tax patent rights. It cannot tax the judicial process. But this implied limitation on this high prerogative power of taxation is not pressed to extreme consequences, which would in fact destroy it; but stops with resistance of a direct repugnant enactment of the state; it is not carried one inch beyond this. Hence, a state may not tax a bank of the United States; but it may impose a tax on the citizens of such state holding stock in such bank, and fix the amount of the tax by express reference to the value of such stock.

So it may tax the real estate held by the bank within the state.

It cannot tax the mint which is the instrument, but it may tax the income of the superintendent, although that income may be made up in whole or in part by the salary of his office. Indeed, unless this be permitted, he might escape taxation; as any tax, if the argument be carried to an extreme, may affect that income. It may not tax the mail, but it may the postmaster. It may not tax the patent rights, but it may the income of the patentee derived from the sale of patented articles. Such is the pedlar's tax or license. It may not tax judicial process, but it may the clerk who issues it. The former is an instrument for the public good, the income of the officer is his private emolument, with which the public has nothing to do.

A contractor, says C. J. Marshall, for supplying a military post with provisions, cannot be restrained from making purchases within any state, or from transporting them to any place at which the troops are stationed, nor could he be fined or taxed for doing so. But the property of the contractor may be taxed as the property of other citizens. Osburn v. United States Bank, 9 Wheat. 867. That property may be the profits of his contracts.

[Dobbins *v.* The Commissioners of. Erie County.]

It might be contended that the tax diminished his ability to execute such contract. The limitation is not carried to such consequences.

A tax on government stock was decided, as we have seen, to be unconstitutional. Weston *v.* City of Charleston, 2 Peters, 449. But it seems to have been admitted in that case, that if the tax had been an income tax, although the income was in part or in the whole made-up of interest on this stock, such tax would have been constitutional. Such appears from the opinion of Justice Johnson, who dissented from the majority of the Court.

So here, a tax upon the hull and apparel of the revenue cutter, commanded by Captain Dobbins, would have been unconstitutional. She was "the means" or "instrument" of the government. But this tax by the state is not of such instrument, but of one of her citizens, whose income is rated to fix the amount of his contribution to the public burden. The distinction is obvious: the reason for the difference is well taken by Chief Justice Marshall in M'Culloch *v.* The State of Maryland, 4 Wheat. 428.

"'The people of a state therefore give to their government a right of taxing themselves and their property. And as the exigencies of government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and on the influence of the constituents over their representative to guard them against its abuse

But the means employed by the government of the Union have no such security, nor is the right of a state to tax them sustained by the same theory.'"

The safeguard of the influence of the constituent over the representative, is as perfect a protection to the citizen who holds office under the government of the Union as to any other citizen. The Court will remark that all offices or posts of profit are required to be rated. There is no discrimination as to the nature of the office or post.

Mr. Justice WAYNE delivered the opinion of the Court.

This cause has been brought to this Court by a writ of error to the Supreme Court of Pennsylvania.

That Court reversed the judgment of the Court of Common

Pleas of Erie County, which it had given in favour of the plaintiff, (now in error,) upon an agreed statement of facts, in the nature of a special verdict.

"It was agreed and admitted, that the plaintiff has his residence and domicil at Erie, Erie county, Pennsylvania, and votes in said place; that he has been for the last eight years an officer of the United States, a captain in the United States revenue cutter service, and ever since his appointment has been in service, in command of the revenue cutter Erie, on the Erie station. That he has been rated and assessed with county taxes for the last three years, 1835, 1836, 1837, as such officer of the United States, for his office, as such, valued at five hundred dollars; which taxes paid by the plaintiff, amount to the sum of ten dollars and seventy-five cents. The question submitted to the Court is, whether the plaintiff is liable to be rated and assessed for his office under the United States, for county rates and levies? If he is, then judgment shall be entered for the defendants; if not, then judgment shall be entered for the plaintiff, for the sum of ten dollars and seventy-five cents."

This is the only question submitted upon the record. We think it sufficiently appears to give the Court jurisdiction, that the Supreme Court in reversing the judgment of the Court of Common Pleas, and in giving judgment against the plaintiffs, decided in favour of the validity of a law of Pennsylvania subjecting the plaintiff to be rated and assessed for his office under the United States, for county rates and levies; the validity of which law was in question, on the ground of its being repugnant to the Constitution and laws of the United States.

It was urged in argument by the counsel for the defendants in error, if the Court has jurisdiction of the cause, that the judgment of the Supreme Court should be affirmed, because the plaintiff when assessed did not apply to the commissioners for relief, as the statute provides. And, that having paid the tax, to an officer who had a colour of right to receive it, it cannot be recovered back by the plaintiff.

Neither of these questions can be considered by this Court. They are not in the special verdict upon which the judgment was rendered. By referring to the case, as reported in 7 Watts, 513, it will be seen that the Supreme Court put the case exclu-

sively upon the power and right of the commissioners to enforce the tax upon the plaintiff, for his office under the United States.

The assessment was made by the commissioners of Erie county under the act of Pennsylvania of the 15th April, 1834. It is believed to be the only instance of a tax being rated in that state upon the office of an officer of the United States. It has, however, received the sanction of the Supreme Court. If it can be lawfully done, it cannot be doubted that similar assessments will be made under that law, upon all other officers of the United States, in Pennsylvania. The language of the Court is, "the case is put on the power and right to impose the tax. In other words, is this a legitimate subject of taxation? Perhaps this may, in some measure, depend on, whether, within the true meaning of the acts, it is the office itself, or the emoluments of the office which are made the subjects of taxation." In the preceding extract we gave the language of the Court. The law is, that an account shall be taken of "all offices and posts of profit." The next section makes it the duty of the assessors, "to rate all offices and posts of profit, professions, trades, and occupations, at their discretion, having a due regard to the profits arising therefrom."

The emoluments of the office, then, are taxable, and not the office. But, whether it be one or the other, we cannot perceive how a tax upon either conduces to comprehend within the terms of the act, the office or the compensation of an officer of the United States. It will not do to say, as it was said in argument, that though the language of the act may import that offices and posts of profit were taxable, that it was the citizen who holds the office whom the law intended to tax, and that it was a burden he was bound to bear in return for the privileges enjoyed, and the protection received from government: and, then, that the liability to pay the tax was a personal charge, because the person upon whom it was assessed was a taxable person.

The first answer to be given to these suggestions, is, that the tax is to be levied upon a valuation of the income of the office. But, besides the obligation upon persons to pay taxes, is mistaken, and the sense in which a tax is a personal charge, is misunderstood. The foundation of the obligation to pay taxes, is not the privileges enjoyed or the protection given to a citizen by government, though the payment of taxes gives a right to protection. Both are en-

joyed, as well by those members of a state who do not, because they are not able to pay taxes, as by those who are able, and do pay them. Married women and children have privileges and protection, but they are not assessed, unless they have goods or property separate from the heads of families. The necessity of money for the support of states in times of peace or war, fixes the obligation upon their citizens to pay such taxes as may be imposed by lawful authority. And the only sense in which a tax is a personal charge, is, that it is assessed upon personal estate, and the profits of labour and industry. It is called a personal charge, to distinguish such a tax from the tax upon lands and tenements, which are enforced without any regard to the persons who are the owners. Taxes are never assessed, unless it be a capitation tax, upon persons as persons, but upon them on account of their goods, and the profits made upon professions, trades, and occupations. They are so imposed, because public revenue can only be supplied by assessments upon the goods of individuals—"comprehending under the word 'goods,' all the estate and effects which every one hath, of whatsoever sort they be. Taxes regard the persons of men only because of their goods." The goods then are taxed and not the person. But those who are to pay the tax are taxable persons, because they are under an obligation to contribute from their means to the necessities of the state. The obligation, however, only becomes a charge upon the person in consequence of the power in the state to enforce the payment of taxes by coercion. This power extends to the sequestration of the goods, and the imprisonment of the delinquent. A tax, according to the object upon which it is laid, may be a personal charge; but that is a very different thing from its becoming a charge upon the person, in consequence of the coercion which may be provided by law to enforce the payment.

We have been more particular in noticing this argument, because it enabled us to put the point upon which it was intended to bear upon right principles. Besides, as it was drawn from the statutes of Pennsylvania, it implied the supposition that her legislature, in these enactments upon taxation, had disregarded those principles. But this is not so. If the occasion was a proper one for this Court to do it, we might easily show that the act through-

out, was framed upon an enlightened recognition by the legislators of that state, of all the principles upon which taxes are imposed.  The only difficulty in the act has arisen from the terms directing assessments to be made upon all offices and posts of profit, without restricting the assessments to offices and posts of profit held under the sovereignty of that state; and not excluding them from being made upon offices and posts of profit of another sovereignty—the United States.

The case being now cleared of other objections, except such as relate to the unconstitutionality of the tax, we will consider the real and only question in it; that is, "whether the plaintiff is liable to be rated and assessed for his office under the United States, for county rates and levies?"

It is not necessary for the decision of this question, that the power of taxation in the states, and in the United States, under the Constitution of the latter, should be minutely discussed.

Taxation is a sacred right, essential to the existence of government; an incident of sovereignty.  The right of legislation is co-extensive with the incident, to attach it upon all persons and property within the jurisdiction of a state.  But in our system there are limitations upon that right.  There is a concurrent right of legislation in the states and the United States, except as both are restrained by the Constitution of the United States.  Both are restrained upon this subject, by express prohibitions in the Constitution.  And the states, by such as are necessarily implied when the exercise of the right by a state conflicts with the perfect execution of another sovereign power, delegated to the United States.  That occurs when taxation by a state acts upon the instruments, emoluments, and persons, which the United States may use and employ as necessary and proper means to execute their sovereign powers.  The government of the United States is supreme within its sphere of action.  The means necessary and proper to carry into effect the powers in the Constitution are in Congress.  Taxation is a sovereign power in a state; but the collection of revenue by imposts upon imported goods, and the regulation of commerce, are also sovereign powers in the United States.  Let us apply then the principles just stated, and the powers mentioned to the case in judgment, and see what will be the result.

Congress has power to lay and collect taxes, duties, imposts, &c., and to regulate commerce with foreign nations and among the several states, and with the Indian tribes. Neither can be be done without legislation. A complicate machinery of forms, instruments, and persons, must be established; revenue districts were to be designated; collectors, naval officers, surveyors, inspectors, appraisers, weighers, measurers and gaugers must be employed; "the better to secure the collection of duties on goods and on the tonnage of vessels," revenue cutters, and officers to command them are necessary. The latter are declared to be officers of the customs, and they have large powers and authority. All of this is legislation by Congress to execute sovereign powers. They are the means necessary to an allowed end: the end, the great objects which the Constitution was intended to secure to the states in their character of a nation. Is the officer, as such, less a means to carry into effect these great objects than the vessel which he commands, the instruments which are used to navigate her, or than the guns put on board to enforce obedience to the law. These inanimate objects, it is admitted, cannot be taxed by a state, because they are means. Is not the officer more so, who gives use and efficacy to the whole? Is not compensation the means by which his services are procured and retained? It is true it becomes his when he has earned it. If it can be taxed by a state as compensation, will not Congress have to graduate its amount, with reference to its reduction by the tax? Could Congress use an uncontrolled discretion in fixing the amount of compensation, as it would do without the interference of such a tax? The execution of a national power by way of compensation to officers, can in no way be subordinate to the action of the state legislatures upon the same subject. It would destroy also all uniformity of compensation for the same service, as the taxes by the states would be different. To allow such a right of taxation to be in the states, would also in effect be to give the states a revenue out of the revenue of the United States, to which they are not constitutionally entitled, either directly or indirectly: neither by their own action, nor by that of Congress. The revenue of the United States is intended by the Constitution, to pay the debts, and provide for the common defence and general welfare of the United States; to be expended, in particulars, in carry-

ing into effect the laws made to execute all the express powers, " and all other powers vested by the Constitution in the government of the United States." But the unconstitutionality of such taxation by a state as that now before us may be safely put— though it is not the only ground—upon its interference with the constitutional means which have been legislated by the government of the United States to carry into effect its powers to lay and collect taxes, duties, imposts, &c., and to regulate commerce. In our view, it presents a case of as strong interference as was presented by the tax imposed by Maryland, in the case of M'Culloch, 4 Wheat. 316; and the tax by the City Council of Charleston, in Weston's Case, 2 Peters, 449: in both of which it was decided by this Court, that the state governments cannot lay a tax upon the constitutional means employed by the government of the Union to execute its constitutional powers.

But we have said that the ground upon which we have just put the unconstitutionality of the tax in the case before us, is not the sole ground upon which our conclusion can be maintained. We will now state another ground; and we do so because it is applicable to exempt the salaries of all officers of the United States from taxation by the states.

The powers of the national government can only be executed by officers whose services must be compensated by Congress. The allowance is in its discretion. The presumption is that the compensation given by law is no more than the services are worth, and only such in amount as will secure from the officer the diligent performance of his duties. "The officers execute their offices for the public good. This implies their right of reaping from thence the recompense the services they may render may deserve;" without that recompense being in any way lessened, except by the sovereign power from whom the officer derives his appointment, or by another sovereign power to whom the first has delegated the right of taxation over all the objects of taxation, in common with itself, for the benefit of both. And no diminution in the recompense of an officer is just and lawful, unless it be prospective, or by way of taxation by the sovereignty who has a power to impose it; and which is intended to bear equally upon all according to their estate.

The compensation of an officer of the United States is fixed by

a law made by Congress.   It is in its exclusive discretion to determine what shall be. given.   It exercises the discretion and fixes the amount, and confers upon the officer the right to receive it when it has been earned.   Does not a tax then by a state upon the office, diminishing the recompense, conflict with the law of the United States, which secures it to the officer in its entireness? It certainly has such an effect; and any law of a state imposing such a tax cannot be constitutional, because it conflicts with a law of Congress made in pursuance of the Constitution, and which makes it the supreme law of the land.

We are, therefore, of opinion, that the judgment of the Supreme Court of Pennsylvania, reversing the judgment of the Court of Common Pleas of Erie county, declaring the plaintiffs was not liable to be rated and assessed for county rates, and levies for his office under the United States, is erroneous; in this—that the said Supreme Court adjudged that the act of Pennsylvania embracing all offices and posts of profit, comprehending offices of the United States, was not repugnant to the Constitution and laws of the United States; whereas this Court is of opinion that such repugnancy does exist.   We are, therefore, of opinion that the said judgment ought to be reversed and annulled; and the cause remanded to the said Supreme Court of Pennsylvania, in and for the western district, with directions to affirm the judgment of the Court of Common Pleas of Erie county