*Court of Common Pleas, Dauphin County, February 23d, 1867.*

### THE COMMONWEALTH OF PENNSYLVANIA v. THE GIRARD BANK.

The Congress of the United States has the power under the Federal Constitution, by an act creating national banks, to authorize the States to impose taxes upon them, but the mode prescribed in the statute must be strictly followed by the State legislatures, as they have no power independent of the act of Congress.

The act of 22d of August, 1864, does not take from the State the power to impose future taxes upon banks complying with its provisions.

BY THE COURT.—The Girard Bank of Philadelphia was incorporated under a law of this State, and continued to do business under its charter until the 21st day of November, 1864, when, having fully complied with the provisions of the enabling act of August 22d, 1864, it was regularly converted into a national bank, under the acts of Congress. All of the taxes due by this institution, so long as it remained a State bank, were regularly

paid.   On the 23d of January, 1866, the accounting department of this commonwealth settled an account against the Girard National Bank, charging it with a tax of three per cent. on its net earnings, from November 30th, 1864, till November 1st, 1865, amounting to $6727.97, from which settlement the bank has entered an appeal.   The State officers claim the right to impose this tax on all of the national banks within the commonwealth, under the provisions of the 2d section of the act of April 30th, 1864, "imposing additional taxes for State purposes," etc.

That section provides, among other things, "that every incorporated and unincorporated banking and saving institution, and deposit and trust company," and after enumerating many others, adds, "and all other companies and corporations doing business in this commonwealth, except those specified in the first section of this act, not paying a tax to the State under existing laws, shall annually, on the first day of November of each year, make report to the auditor-general of the amount of net earnings or income received by said individuals or corporations, from all sources during the preceding year, and upon such net earnings or income, the said individuals or corporations shall pay to the treasurer, for the use of the State, within sixty days thereafter, three per centum upon such annual net earnings or income, in addition to the taxes now imposed by existing laws."   It is very clear that this bank comes within the letter of the law, provided it applies to corporations created *in futuro*, as well as to those then existing.   It is "an incorporated banking company," and "a corporation doing business in this commonwealth," and "not paying a tax on its dividends to the State."   Does it come within the spirit and intention of the act, and had the legislature the constitutional power to impose such a tax, in that form, on this national bank? It must be borne in mind that, at the time of enacting this law, the Girard Bank was a State institution, paying a tax on its dividends under the various acts of Assembly, and therefore did not come within the provisions of the statute.   If liable for the tax, it is because it surrendered its charter under the enabling act, and became a national bank.

The defendant objects to this taxation for various reasons.   It contends that it is exempt from all State taxes under the Constitution of the United States.   If any can be imposed, it must be in strict accordance with the act of Congress, which it avers this is not; that it paid full consideration to the commonwealth for relief from future taxation under the enabling act, and that it was not the intention of the legislature to impose a tax on it, or any other national bank, under this statute; that if within the letter, it is not within the spirit of the act of Assembly.

If the Congress of the United States has the power to incorporate a bank or create any other corporation, it is because such

[The Commonwealth of Pennsylvania *v.* The Girard Bank.]

institution is essential, or at least *very convenient*, as a fiscal agent of the Federal government, and that it has clearly settled in McCullough *v.* The State of Maryland (4 Wheaton, 316), and Osburn *v.* The Bank of the United States (9 Wheaton, 378), each of which cases have been recognized as sound law in numerous decisions since, both in the Federal and State courts. If required to transact the business of the nation, there is no authority in the States to impose any tax whatever on the agent so created and employed. If the States could tax, they could exclude the institution from their borders; for the power to tax *ad libitum*, is virtually the power to destroy. All subjects over which the sovereign power of a State extends, are objects of taxation, but those to which it does not extend, are exempt from taxation. The sovereignty of a State extends to everything which exists by its own authority, or is introduced by its permission, but not to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the United States. The attempt to use the power of taxation on the means employed by the government of the Union in pursuance of the Constitution, is itself an abuse, because it is the usurpation of a power which the people of a single State cannot give (see 4 Wheaton, 316, and 9 Wheaton, 378, already cited). The principle of immunity from State taxation has been applied to all the means devised by Congress, or under the laws thereof, to carry on the Federal government. The bonds or loans thereof cannot be taxed under State laws (Weston and others *v.* The City Council of Charleston, 2 Peters, 449). If a State can tax, it may substantially destroy the power of the General Government to borrow, a power essential to the very existence of the nation in time of war, the safety of which may depend on its exercise. The salaries of United States officers, whether in the army, the navy, or the civil service, cannot be taxed in the States where they may chance to be stationed, but the emoluments of such officers are exempt from all State taxation (Dobbins *v.* The County of Erie, 16 Peters, 435). The ground held by the United States for national purposes, such as forts, dockyards, barracks, hospitals, or other objects of that character, cannot be taxed by the States within which they are situated, nor is it necessary that Congress should prohibit State taxation; it follows as a consequence of creating the institution or the office (9 Wheaton, 865, 866, and 867). The case of the Barracks at Carlisle (2 Wallace, Jr., p. 72).

The Congress of the United States, for reasons which it must have considered essential to the well-being of the nation, thought proper to authorize the creation of banks in every State of the Union then adhering to the Federal compact. They were intended as fiscal agents of the government, and were also devised

as a means of raising money on national securities at a time of great depression in the finances, when the funds were most essential in the struggle for national existence, and the maintenance of the war waged in suppressing the rebellion.   The banks are substantially founded on the bonds and other moneyed securities of the United States, as each institution was obliged to procure and pledge with the government a sum exceeding the amount of its whole circulation, to secure the same from loss or depreciation.   We cannot doubt the power of Congress to create these banks for the purposes indicated, and their general utility has never been questioned by any business man; they have substantially equalized the paper currency throughout our extended borders, making that which is good in Kansas or Missouri equally good in New York or Boston.

The banks thus purchasing and holding the bonds of the United States could properly rely on their immunity from State taxation, both on the strength of the cases already cited and the express provisions of the laws under which they were issued.   It could not be supposed that the States would ever be permitted to tax the national loans in their hands.   In accepting their charters they had the same guarantee that the institutions, when created, should be no further subject to State taxation than is provided for in the statute establishing them as fiscal agents, and that the taxes should be imposed as provided in the organic law.   It has often been contended that it transcends even the power of Congress to permit agents of this character, created for national purposes, to be in any manner subjected to the power of the States; that they were protected by the Constitution.   This might be the case were it attempted by a subsequent act, but when it is a condition of the grant, made part of the law of their existence, I am well satisfied that, if accepted by the banks on the terms held forth, it is binding and valid, is a voluntary contract, and cannot be gainsayed by the institution.   Congress can best judge how far the interest of the nation requires it to be protected from State action, and when a charter is accepted the bank cannot complain that it is oppressed; *volenti non fit injuria.*

The forty-first section of the act of 1864 provides " that nothing in this act shall be construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation, in the assessment of taxes imposed by or under State authority, at the place where such bank is located, and not elsewhere; but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State.   Provided further, that the tax so imposed under the laws of any State, upon the shares of any of the associations authorized by this act, shall not exceed the rate imposed upon the shares of

[The Commonwealth of Pennsylvania *v.* The Girard Bank.]

any of the banks organized under the authority of the State where such association is located." We have already said, that if a tax can be imposed upon any national bank by a State, it is by virtue of the authority conferred by this act, and we are also of the opinion that it must be done substantially in the manner, and to no greater amount than the statute authorizes. The State law of April 30th, 1864, does not conform in any particular to the act of Congress. It requires no valuation of the stock held in the institution by the owner thereof, but assesses a gross sum of three per centum upon the annual net earnings or income of the corporation, in addition to the other taxes imposed by law. If it approximates to the act of Congress, it must be in not exceedign the rate imposed upon the shares of the State banks; but they, it has been already shown, do not come within this tax law, are not embraced in its provisions, as they pay a tax on their dividened. Whether this three per centum would or would not exceed the tax imposed on the dividends and capital stock of the State banks, we are not prepared to say, but it is manifest that no valuation has been made of the shares or stock of this national bank in the manner required, as to the personal property of individuals.

In one particular it is very evident that the system of taxation prescribed by the act of Assembly is more onerous on the national than on the State banks, or corporations, or individuals. The capital stock of the national banks is mainly composed of United States bonds; from the interest paid on these moneyed securities a large portion of their net profits is made. These bonds, when held by a State bank, a corporation, or individual, are free from taxation; no charge can be made against them by any State government, either directly or indirectly; it would operate as a restriction on the power of the Federal government to borrow money, consequently it must be excluded from the valuation of the capital stock of the bank as much as if in the hands of an individual or an insurance company; a State law taxing it is void (Bank of Commerce *v.* The City of New York, 2 Black, 620). And again, where a law of New York required a tax to be imposed on a valuation equal to the amount of the capital stock paid in or secured to be paid, and a large portion of that capital consisted of United States securities, and the tax was imposed on the whole, according to the valuation, it was held that the law was unconstitutional and void, as it was in effect a tax on the government bonds in the hands of the State banks (The Bank Tax Cases, 2 Wallace, 200). But where a State law imposed a similar tax on the national banks within its limits, it was held by the same court that no deduction was to be made on account of the government securities held by them; that they were to be valued and taxed as other capital (Van Allen *v.* The Assessors, 3 Wallace, 573). This is, in our opinion, most clearly directing a different

[The Commonwealth of Pennsylvania v. The Girard Bank.]

mode of valuation and taxation on national from that imposed on State banks, or moneyed capital in the hands of individuals. But perhaps our reasoning on this subject is fallacious, as the court declares it was not the intention of the law to require a like *valuation*, but the same *rate of tax*. It comes to this: If a State bank has a capital of one hundred thousand dollars and invests the whole of it in United States bonds, from which it receives an interest of six thousand dollars, and on its other business derives a profit of six thousand dollars—twelve thousand in all—and a national bank has a like capital invested in the same securities, draws the same interest, and makes a similar profit from its other business, the State may lay a uniform tax on the net profits of each, say three per centum, and oblige the former to pay a tax of eighteen hundred dollars by deducting the government securities, and the latter to pay thirty-six hundred dollars by making no deductions, and yet this is called a like rate of taxation. The principle is reiterated in two subsequent cases (Duer v. The Tax Commissioners, and Mead v. The Tax Commissioners, not yet reported), and must now be taken and held as the settled law of the country.

However unsatisfactory we may consider the reasoning of the court, we must receive it as a matter of faith; but we are unable, after the most careful consideration of this statute, to discover even an intimation that Congress, in its enactment, intended to depart from the long-settled policy of the nation, prohibiting the States from taxing the national securities in any form; it is not so declared by the law, and there is nothing showing an intended distinction between these banks and private persons purchasing and holding the bonds; the immunity is not claimed from this statute, but from the laws creating the loans, and the general system of national jurisprudence on the subject; the banks are not told, if you buy these securities they shall be subject to State taxation in your hands. It is not to be found in the fortieth section of the act, which is merely designed to furnish a means of assessing taxes on individual stockholders and the general business of the bank. But this is beside our case, which turns not on the amount, but whether the State law does or does not impose the tax in a manner that can be sustained.

We have already mentioned that at the time the act of April 30th, 1864, was passed, this and most other of the national banks were not in existence, and over those which were, the legislature had no control, no power of taxation having been conferred by the act of 1863. It could not, therefore, have been intended to be taxed by that law. There are other matters which prove that national corporations were not included. The governor is empowered by the second section to declare the rights and privileges of the corporations, which failed to make a return of their busi-

[The Commonwealth of Pennsylvania *v.* The Girard Bank.]

ness, forfeited by his proclamation. It cannot be supposed that he could abrogate the charters of national banks by any act or proceedings; the legislature could confer no such power, as they are not institutions of State creation. The enabling act, of the 22d of August, 1864, bargained with the State banks that if they would surrender their specie certificates they should be entitled to the privileges of the act, but if any one held no such certificates for coin, then it was to be taxed on its dividends and surplus fund, and all were to pay taxes up to the time they became national associations. Taking the whole scope of these two laws into consideration, we do not believe that the legislature intended to tax the national banks at that time in the manner now proposed; but there is nothing in the enabling act which has the appearance of a contract on the part of the State to exempt them from *future taxation.* To take away this power on the part of the State, there must be express words or a clear and manifest design declared by the law; and the mere imposition of a present bounty, in the surrender of the specie certificates, is not such a manifestation. The opinion expressed by Justice McLean, in Bank of Ohio *v.* Knoop (16 Howard, 369), has never been acquiesced in. All we decide is, that the act of April 30th, 1864, was not intended to impose a tax on any of the national banks, but it may be done at any time by the legislature in the method pointed out by the act of Congress; and perhaps the remedy by appraisement is merely modal, and the object can be effected. in other forms, provided the tax does not exceed that imposed on State banks or moneyed capital in the hands of individuals. We are of the opinion that the tax cannot be imposed by mere implication, but should be done directly; and in assessing it, the whole value of the assets, including the national bonds, may be embraced, according to the decisions cited. This should be done by the legislature without delay, so as to bring all the national banks within the commonwealth under our tax laws. Judgment must be rendered in favor of the defendant on the case stated.