# Cook et al. v. Commissioners Of Sinking Fund Of City Of Louisville et al.

January 17, 1950.

W. Scott Miller, Judge.

**2**

Robert L. Sloss, Wilson Wyatt, Louis Lusky and Wyatt, Grafton & Grafton, of counsel, for appellant.

Gilbert Burnett, City Attorney, John Moremen, Assistant City Attorney, and James E. Thornberry for appellee.

VAN SANT, COMMISSIONER—Affirming.

The sole question for our determination is whether employees of the United States Government are immune from liability for the tax imposed by Ordinance of the City of Louisville, and which was declared to be valid by this Court in City of Louisville v. Sebree, 308 Ky. 420, 214 S. W. 2d 248. In holding the Ordinance to be valid, we rejected the contention that it imposed an income tax and adopted the contention of the City that the Ordinance "lays the tax upon the privilege of working * * * within the City, and only measures the value of the privilege by the amount of earnings or net profit." Section (1) of the Ordinance in so far as pertinent to the question provides: "Section 1. That after June 30, 1948, every person, association, corporation or other entity engaged in an occupation, trade, profession, or other activity in the City shall pay into the Sinking Fund of the City for the purposes set forth under Section 91.200 of the Kentucky Revised Statutes as amended by an Act of the General Assembly of 1948, an annual license fee for the privilege of engaging in said activities, which license fee shall be measured by one per centum of (a) all salaries, wages, commissions and other compensations earned by every person in the City for work done or services performed or rendered in the City; and (b) the net profits of all business, professions or other activities conducted in the City."

Section 16 of the Ordinance provides: "Section 16. Any person or corporation who shall fail, neglect or refuse to make any return required by this ordinance or any licensee who shall fail, neglect or refuse to pay the license fees, or any employer who shall fail to withhold

said license fees or to pay over to the City penalties or interest imposed by this ordinance, or any person who shall refuse to permit the Secretary-Treasurer or any agent or employee designated by him, in writing, to examine his books, records and papers, or who shall knowingly make any incomplete, false or fraudulent return, or who shall attempt to do anything whatever to avoid the full disclosure of the amount of earnings or profits in order to avoid the payment of the whole or any part of the license fee shall, upon conviction, be subject to a fine or penalty of $100.00 and costs for each offense or imprisonment of not more than thirty (30) days.''

The Ordinance further declares that the tax, if not withheld by the employer, shall be due and payable on the fifteenth day of the fourth month following the close of each taxable year. The United States Government is not compelled, nor has it been requested, to withhold the tax from wages or salaries of its employees.

Appellants' contention that they are immune from the tax is based upon the theory that it imposes a burden on the Federal Government and, consequently, falls within the scope of the many cases decided by the Supreme Court of the United States holding that, in such an event, the tax is unconstitutional.

In one of its early decisions, M'Culloch v. State of Maryland, 4 Wheat 316, 4 L. Ed. 579, rendered in the year 1819, the Supreme Court construed the Federal Constitution as impliedly forbidding the states and their political subdivisions to impose, by taxation or otherwise, any burden upon the Federal Government, or any of its governmental agencies, in the exercise of its, or their, governmental functions. This principle, to the extent that it is confined, as it was in the M'Culloch case, to a direct tax on governmental functions, never has been departed from and is as applicable today as it was 130 years ago. But the theory of absolute immunity should not be extended beyond the realm of realities and applied to legalistic fictions. By way of limiting the scope of immunity to functions of government, Chief Justice Marshall, in writing the opinion in the M'Culloch case, stated: ''This opinion does not deprive the states of any resources which they originally possessed. It does not extend to a tax paid by the real

property of the bank, in common with the other real property within the state, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the state. But this is a tax on the operations of the bank, and is, consequently, a tax on the operation of an instrument employed by the Government of the Union to carry its powers into execution.''

Despite the thought that pervades the decision, the author of the opinion casually made the assertion: ''the power to tax involves the power to destroy.'' This phrase was seized upon as the basis for extending the doctrine of absolute immunity to a point which we believe to be beyond the realm of realities, until finally it was directly criticized by Mr. Justice Holmes in his dissent from the court's decision in Panhandle Oil Co. v. Mississippi, 277 U. S. 218, 223, 48 S. Ct. 451, 72 L. Ed. 857, 859, 56 A. L. R. 583. This criticism of the phrase was adopted by Mr. Justice Hughes in a concurring opinion in Graves v. New York, 306 U. S. 466, 490, 59 S. Ct. 595, 603, 83 L. Ed. 927, 938, 120 A. L. R. 1466, wherein he said: ''All these doctrines of intergovernmental immunity have until recently been moving in the realm of what Lincoln called 'pernicious abstractions.' The web of unreality spun from Marshall's famous dictum was brushed away by one stroke of Mr. Justice Holmes's pen: 'The power to tax is not the power to destroy while this Court sits.' ''

Previous to the Graves decision, as the opinion points out, and as we previously have intimated, a succession of decisions, based upon Marshall's rhetorical phrase ''the power to tax involves the power to destroy,'' withdrew from the taxing power of the states and the National Government a measurable portion of their original fields of taxation, without regard to actualities in respect to burdens on governmental functions. At the same time, requirements of national, state, and local governments steadily were increasing. Such inhibitions upon taxing powers caused states, in turn, to encroach upon taxable fields theretofore inferentially reserved to local governments. No doubt perceiving the inevitable curtailment of the benefits to be derived from local government, and realizing that extension of

immunities works greater hardships on taxing governments than it possibly can benefit the governments remotely related to the burden of the tax, the decisions extending the scope of immunity have met with increasing disfavor, notably expressed in dissenting and concurring opinions under the pens of eminent Jurists, from one of whom (Mr. Justice Hughes) we already have quoted.

Four of the decisions extending the doctrine are Dobbins v. Erie County, 16 Pet. 435, 10 L. Ed. 1022; Collector v. Day (Buffington v. Day), 11 Wall. 113, 20 L. Ed. 122; People of State of New York ex rel. Rogers v. Graves, 299 U. S. 401, 57 S. Ct. 269, 81 L. Ed. 306, and Brush v. Commissioner of Internal Revenue, 300 U. S. 352, 57 S. Ct. 495, 81 L. Ed. 691, 108 A. L. R. 1428.

In the Dobbins case, the commissioners of Erie County, Pennsylvania, sought to tax an officer of the United States by assessing the value of his office for county rates and levies. In denying the right of the county to tax the privilege of holding the office, the court said, as is argued here: ''The compensation of an officer of the United States is fixed by a law made by Congress. It is in its conclusive discretion to determine what shall be given. It exercises the discretion and fixes the amount, and confers upon the officer the right to receive it when it has been earned. Does not a tax, then, by a State upon the office, diminishing the recompense, conflict with the law of the United States, which secures it to the officer in its entireness? It certainly has such an effect; and any law of a State imposing such a tax cannot be constitutional, because it conflicts with a law of Congress made in pursuance of the Constitution, and which makes it the supreme law of the land.''

In Buffington v. Day, supra, the Federal Government was denied the right to impose a tax on the salary or emoluments of an officer of the State of Massachusetts, to wit, a judge of the court of probate and insolvency of the county of Barnstable.

In People of State of New York ex rel. Rogers v. Graves, supra, it was held that where a corporation is immune from state taxation as an instrumentality of the Federal Government, fixed salaries and compensa-

tion paid to its officers and employees in their capacities as such likewise are immune.

In Brush v. Commissioner of Internal Revenue, supra, it was held that salaries and compensation paid to municipal officers and employees engaged in the performance of government functions were immune from Federal taxation. Other decisions of the Supreme Court extended the immunity in various directions but all were based upon the assumption that the immunity of a government extends to its officers and employees.

The repudiation of such extended immunities finally was pronounced in Helvering v. Mountain Producers Corporation, 303 U. S. 376, 58 S. Ct. 623, 82 L. Ed. 907, which gave rise to a re-examination by the Supreme Court of the theory underlying the extension of the immunity to salaries of employees of one government from taxation by a coexisting government in Helvering v. Gerhardt, 304 U. S. 405, 58 S. Ct. 969, 82 L. Ed. 1427. In that case, it was held that employees of the states of New York and New Jersey were not immune from the payment of the Federal income tax. Following that decision there was presented anew the question of whether employees of the Federal Government are subject to the income tax laws of a state government. Graves v. New York, 306 U. S. 466, 59 S. Ct. 595, 604, 83 L. Ed. 927, 120 A. L. R. 1466, supra. In that case the court refused to sanction the extended doctrine and overruled the former decisions so doing. In the concurring opinion of Mr. Justice Hughes, from which we have hereinbefore quoted, he additionally said: "Neither Dobbins v. Erie County, 16 Pet. 435, 10 L. Ed. 1022, and its offspring, nor Collector v. Day [(Buffington v. Day), 11 Wall. 113, 20 L. Ed. 122], supra, and its, can stand appeal to the Constitution and its historic purposes. Since both are the starting points of an interdependent doctrine, both should be, as I assume them to be, overruled this day."

The majority opinion by Mr. Justice Stone recites: "So far as the implication rests upon the purpose to avoid interference with the functions of the taxed government or the imposition upon it of the economic burden of the tax, it is plain that there is no basis for implying a purpose of Congress to exempt the federal

government or its agencies from tax burdens which are unsubstantial or which courts are unable to discern. Silence of Congress implies immunity no more than does the silence of the Constitution. It follows that when exemption from state taxation is claimed on the ground that the federal government is burdened by the tax, and Congress has disclosed no intention with respect to the claimed immunity, it is in order to consider the nature and effect of the alleged burden, and if it appears that there is no ground for implying a constitutional immunity, there is equally a want of any ground for assuming any purpose on the part of Congress to create an immunity.''

As we have pointed out, the tax imposed by the Ordinance in question is not an income tax, but it is as remote as an income tax in relation to the governmental agency employing the taxpayer. Both, presumably, must be paid from compensation paid to the taxpayer by the Government. It so happens, although it in no wise controls our decision, the tax imposed by the Ordinance in question, in so far as Federal employees are concerned, is reportable and payable on the precise date that the state income tax for the same period of time is reportable and payable by the same class of employees. The fact that the tax is on the occupation of the taxpayer is of little significance here. Nomenclature does not cast a burden, and when immunity is claimed from a tax laid on private persons, it must appear clearly that the burden is real and not one of mere fancy. Helvering v. Gerhardt, supra, and Willcuts v. Bunn, 282 U. S. 216, 231, 51 S. Ct. 125, 75 L. Ed. 304, 310, 71 A. L. R. 1260.

But it is insisted that the penalty imposed under Section 16 of the Ordinance is an interference with the right of the Federal Government to employ persons of its own selection, and, therefore, casts a burden upon that government. It is unnecessary for us to determine the validity of that part of Section 16 which permits the imposition of a prison sentence for failure to pay the tax when due. That question is not involved in the case; and if that part of the Ordinance should be held to be invalid, such determination would not affect the validity of the Ordinance as a whole. In inquiring into the question of whether the provisions of a law cast a

burden upon a coexisting government, the courts must examine the law under the assumption that it will be obeyed, not that it will be violated. If the rule were otherwise, we would find ourselves in the untenable position of declaring that laws imposing confinement in the penitentiary on those found guilty of all criminal offenses would not be applicable to employees of the Federal Government, because, by such confinement, the government would be deprived of their services. Under the income tax laws of the Commonwealth, one may be imprisoned for fraudulent failure to disclose taxable income; yet, it has never been suggested that a federal employee is immune from the provisions of the state income tax law on this account. Our question is confined to whether conformity to the Act imposes a burden, not whether failure to conform creates a burden.

From what we have observed it will be seen that the tendency of recent judicial decisions indicates a definite shift from immunity to taxability, in construing constitutional implications. This shift, in good reason, is the result of complexities which have arisen in the ever gradual and sometimes abrupt expansion of governmental and intergovernmental activities. The earlier philosophy of immunity was not based upon the theory that the government should obtain a competitive advantage over persons engaged in private enterprise. National, state, and local governments must exist together, and each must be supported by all who enjoy their benefits.

Johnson v. Maryland, 254 U. S. 51, 41 S. Ct. 16, 65 L. Ed. 126, does not conflict with the modern trend. Therein, the court held that the State of Maryland had no power to require a truck driver of the Post Office Department of the United States Government to obtain a drivers license from the state. The principle upon which that decision was based is expressed by the author of the opinion in the following words: "It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them and pay a fee for permission to go on. Such a requirement does not merely touch the Government servants remotely by a general rule of conduct; it lays hold

of them in their specific attempt to obey orders and requires qualifications in addition to those that the government has pronounced sufficient. It is the duty of the Department to employ persons competent for their work and that duty it must be presumed has been performed. * * *''

In the instant case, the tax is not discriminatory, but is imposed on federal employees in common with persons employed by the state, county, city, and privately owned businesses. The payment of the fee is not a prerequisite to the right of the taxpayer to perform his duties: the fee is not collectible until the fifteenth day of the fourth month after the duties shall have been performed. The City does not require the taxpayer to possess qualifications in addition to those that the government has pronounced to be sufficient; and, if it affects at all the capacity of the instrumentality of the government employing the taxpayer, its effect on the instrumentality is so remote, in the light of realities, as to be deemed to be negligible. If it could be determined with any reasonable degree of certainty that any portion of the burden of the tax levied against its employee and measured by his income could reach the Federal Government, such would be a mere incident arising out of the coexistence of more than one taxing authority, and which was known and recognized at the time of the adoption of the Federal Constitution. The tax is imposed to defray the costs incurred by a local government in providing public facilities which the taxpayers, in common with other gainfully employed persons in the City of Louisville, are permitted to enjoy.

The law, as pronounced in Graves v. New York, supra, has not been departed from and is controlling in this case. One of the decisions it overruled; viz., Dobbins v. Erie County, supra, was based upon facts identical with those in this case. The tax was not a tax on income, it was one laid on the taxpayer's privilege of holding a federal office to be measured by the compensation of the office. Under our construction of the present law, as declared by the Supreme Court, the taxpayer is not immune from the provisions of the taxing ordinance.

The judgment of the Chancellor to this effect must be, and hereby is, affirmed.