COMMISSIONERS OF the SINKING FUND OF the CITY OF LOUISVILLE, Appellant,

v.

Hon. Henry D. HOPSON, Hon. Richard C. Oldham, Hon. Charles H. Anderson, Hon. S. Rush Nicholson, Hon. George H. Kunzman, Appellees.

Court of Appeals of Kentucky.

Jan. 18, 1980.

Robert F. Matthews, John H. Stites, III, Greenebaum, Doll & McDonald, Louisville, for appellant.

Frank A. Logan, Louisville, for appellees.

Before GANT, COOPER and WILHOIT, JJ.

GANT, Judge.

This action was brought by appellees, five of the circuit judges of the 30th judicial district, seeking a declaratory judgment pursuant to KRS 418.040. The sole question presented is whether the appellees are liable for the payment of the occupational tax levied by the City of Louisville pursuant to General Ordinance 727 of that city. The lower court held that appellees were exempt. We reverse.

Section 181 of the Constitution of Kentucky provides, in applicable part:

> The General Assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes. The General Assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax; and may, by general laws, delegate the power to counties, towns, cities and other municipal corporations, to impose and collect license fees on stock used for breeding purposes, on franchises, trades, occupations and professions.

KRS 92.281 authorizes the cities of this state to levy and collect all taxes provided for in Section 181 of the Constitution and KRS 82.090 provides as follows:

> Cities may impose occupational taxes on state officers and employes except elected officers paid on per diem basis.—(1) The legislative boards or councils of the cities of this commonwealth are hereby

severally authorized by ordinances applying to occupations generally to impose occupational taxes *upon all state employes and officers whether appointive or elective,*. for services performed therein, except those elected officers who are paid on a per diem basis. (Emphasis added). (2) Except as provided in subsection (1) of this section, no person shall be relieved from liability for any occupational license tax levied for revenue purposes by any legislative board or council of a city of this commonwealth by reason of his carrying on his occupation or performing services on any state property or area within the bounds of such city.

▆▆▆ In addition to statutory authority, the rights of cities to levy occupational taxes on its citizens have been specifically upheld by the court. In the case of *City of Louisville v. Sebree,* 308 Ky. 420, 214 S.W.2d 248 (1948), the occupational tax was declared constitutional. In the case before us, the lower court seized upon an excerpt from that case to talk of a "license tax" and utilized a definition from the *Sebree* case, holding "that a license is in the nature of a specific privilege and that as stated in *Sebree, supra,* it 'confers on a person the right to do something which otherwise he would not have the right to do'." This definition is quoted out of context. Commissioner Stanley, in *Sebree,* thoroughly distinguished between a license tax and an occupational tax in the following language, at page 428, 214 S.W.2d at page 253:

Specifically or technically speaking, [a] license means to confer on a person the right to do something which otherwise he would not have the right to do—a special privilege rather than a right common to all persons. It imports regulation. A "license fee" implies the imposition or exaction on the right to exercise a business privilege. That term is used exclusively in the ordinance, which also specifically deals with peddlers, pool rooms, taxi cabs and other occupations commonly requiring a license. Such a "license fee" may be imposed either under the police power for the purpose of regulation or the taxing power for the purpose of reve-

nue or both. (Citing authorities). *It is apparent that the present ordinance was enacted as a revenue measure.* Since the levy is primarily for revenue, to speak with technical accuracy, the tax imposed is an occupation tax. It lays a pecuniary burden for the support of the municipal government—the revenues being expressly allocated first to the sinking fund and the balance to the general fund of the city.

The courts have previously discussed this obvious difference. In the case of *City of Henderson v. Lockett,* 157 Ky. 366, 369, 163 S.W. 199, 201 (1914), we find the following:

It will thus be seen that the city may, in the exercise of its police power, license and regulate automobiles

.    .    .    .    .

Where a license fee is exacted as a revenue measure, under statutory authority based upon section 181 of the Constitution, the courts will not interfere with the exercise of that power unless the action is arbitrary and oppressive. But, where a license fee is imposed under the police power, the fee exacted must not be so large as to charge the ordinance with the imputation of a revenue-producing purpose. The fee that may be imposed under the police power is one that is sufficient only to compensate the municipality for issuing the license and for exercising a supervisory regulation over the subjects thereof.

*See also City of Georgetown v. Morrison,* Ky., 362 S.W.2d 289 (1962); *Martin v. City of Greenville,* 312 Ky. 292, 227 S.W.2d 435 (1950); *Daily v. City of Owensboro,* 257 Ky. 281, 77 S.W.2d 939 (1934).

In summary, a license carries with it a regulatory function and a license tax is a tax on the right to exercise a business privilege which is commonly regulated, carrying with it an exercise of the police power and supervision. An occupational tax is founded solely on the production of revenue.

■ As the court stated in *Sebree, supra,* "... [T]he character of any tax is to be determined by its incidents and the name by which it is described in the legislation imposing it is without significance." The ordinance here in question is entitled "Occupation Licenses." This being without significance, we examine the ordinance itself. It purports to impose "an annual license fee" on "(a) all salaries, wages, commissions or other compensation earned by every person in the city for work done or services performed or rendered in the city, and (b) the net profits of all businesses, professions or occupations from activities conducted in the city."

There is no license issued, no certificate to be displayed, no regulations imposed, no provisions for revocation of privilege, and the sole penalty provided is a fine for failure to properly file returns. The ordinance does provide for licenses and regulations for certain additional categories, such as amusements, dance halls, pool and billiard tables, itinerant merchants, peddlers and solicitors, taxi cabs, collecting agencies, detective agencies, loan companies, pawn brokers, game tables, firearm dealers, etc. Insurance companies, domestic servants, ordained ministers and church employees are exempted.

■ The lower court apparently founded its exemption upon the license concept, which, as we have pointed out, is an erroneous concept. There was no threat herein, as envisioned by the lower court, to the independence of the judicial system as created under the Judicial Article and the "one Court of Justice" concept therein. If this ordinance, in any manner, sought to base its existence on the privilege of the courts of this state to do business, sought to regulate them in any way, or threatened revocation of a privilege as punishment for noncompliance, this Court would not hesitate to declare it invalid. However, this ordinance is simply a revenue measure, imposing an occupational tax, and in this respect the judges of this Commonwealth are no different than the federal employees in the case of *Patrick v. City of Frankfort,* Ky., 539 S.W.2d 275 (1976).

Indeed, the courts have been careful to include the judiciary in the category of other state employees or general citizenry. In *Batesville Casket Co. v. Fields,* 288 Ky. 104, 155 S.W.2d 743 (1941), the court declared that a statute relating to the attachment or garnishment of salaries of employees of state and local government applied to circuit judges. In *Martin v. Wolfford,* 269 Ky. 411, 107 S.W.2d 267 (1937), the court held that the state income tax applied to judges despite a provision against decreasing their salaries during their term of office.

Our holding was placed in adequate perspective in the case of *Cook v. Commissioners of Sinking Fund of City of Louisville,* 312 Ky. 1, 9, 226 S.W.2d 328, 332 (1950), when that court held that the tax "is not a prerequisite to the right of the taxpayer to perform his duties ..." The court went on to say that "The tax[es] imposed to defray the costs incurred by a local government in providing public facilities which [these] taxpayers, in common with other gainfully employed persons in the City of Louisville, are permitted to enjoy."

■ It is within our inherent power to give this decision prospective application. *Lasher v. Commonwealth,* Ky., 418 S.W.2d 416 (1967). To impose taxes now for previous years would invoke undue hardship, especially in light of the fact that there was no previous published opinion by the courts of Kentucky deciding the question. As a matter of fact, repeated inquiries to the Office of the Attorney General had consistently resulted in the dissemination of a case from the Franklin Circuit Court styled *City of Frankfort v. Hill* which contained a seemingly contrary opinion.

Accordingly, this opinion shall have prospective application only. *See German Gymnastic Ass'n of Louisville v. City of Louisville et al.,* 306 Ky. 810, 812, 209 S.W.2d 75 (1948), and cases cited thereunder.

Casting ourselves upon our own fiscal sword, we reverse the judgment of the lower court.

WILHOIT, J., concurs by separate opinion.

COOPER, J., dissents.

WILHOIT, Judge, concurring.

While I am no more anxious to be cast upon a fiscal sword than any other taxpayer, I must concur in Judge Gant's opinion. Long-standing and consistent interpretation of Section 181 of the Constitution by our Supreme Court and the public policy expressed by KRS 82.090 do not seem to permit a contrary result. Undoubtedly, constitutional officers such as judges are not engaged in either a "trade" or "profession" in the performance of their official functions. They are, however, engaged in an "occupation." "Occupation" has been defined to encompass "whatever one follows as a means of making a livelihood." *Benefit Association of Railway Employees v. Secrest,* 239 Ky. 400, 39 S.W.2d 682, 684 (1931).