PEOPLE *ex rel.* NATIONAL BROADWAY BANK *v.* HOFFMAN *et al.*

*Taxation.*

Certificates of indebtedness, issued by the United States to creditors of the government, for supplies furnished to it in carrying on the war of the rebellion, under the act of congress of the 1st March 1862, are not taxable by the state authorities.[1]

APPEAL from the general term of the Supreme Court, in the first district, where a judgment in favor of the defendants, in a case of *mandamus*, had been affirmed.

This was an alternative *mandamus*, at the suit of the National Broadway Bank, commanding the Mayor of New York, the comptroller, and the clerk of the board of supervisors, to sign, countersign and seal certain bonds for the repayment of the taxes which had

[1] So decided by the supreme court of the United States, reversing the decision of the court of appeals in this case. 7 Wall. 16.

been assessed upon and paid by the bank for the years 1863 and 1864, or show cause to the contrary.

On 30th April 1866, an act was passed authorizing and directing the board of supervisors of the county of New York to refund to any bank which might have paid taxes in that county for the years 1863 or 1864, such an amount of said tax as was imposed or levied upon said bank in respect to any portion of its capital stock invested in securities of the *United States, by law exempt from taxation; and, for that purpose, to cause to be issued county bonds, signed, sealed and attested, as thereby required, for the amount of the claim of such bank, after it should have been audited and allowed by said board, and approved by the mayor and corporation counsel. (Laws of 1866, vol. 2, p. 1996.)

The Broadway Bank, having paid such tax, presented its claim to the board, and the same was audited and allowed at the sum of $53,132.31, as of the 1st May 1866, and such auditing and allowance was approved by the mayor and corporation counsel, and bonds for that amount were ordered by the board to be issued to said bank.

In pursuance of an ordinance of the said board, passed the 7th January 1867, county bonds, in the form prescribed by the act of 30th April 1866, and said ordinance, were prepared and ready to be signed, sealed and issued to the said bank; but the defendants refused to execute or deliver the same. The ground of this refusal was, that a portion of the capital stock of the Broadway Bank, on which the aforesaid taxes of 1863 and 1864 were levied, was invested in certificates of indebtedness, issued under the act of congress of the 1st March 1862; and the defendants claimed that such certificates were not securities of the United States by law exempt from taxation, and that it had been so adjudged

by a branch of the supreme court, since the decision of the board of supervisors.

The Broadway Bank, thereupon, sued out a writ of *mandamus*, to compel the signing, countersigning and sealing of the said bonds; an answer was put in to the alternative writ, setting up the foregoing defence; and the court, on hearing, being of opinion with the defendants, gave judgment for the defendants denying a peremptory writ.

The judgment was subsequently affirmed at general term, and the bank took this appeal.

*Burrill*, for the appellant.

*O'Gorman*, for the respondents.

HUNT, J.—Certain evidences of debt against the United States, are authorized by two several statutes, to which I will presently refer, which it is claimed are exempt from taxation *by state authority. The exemption is claimed on two grounds: First, of [ * 11 the express declarations of the United States statutes to that effect; secondly, that they are instrumentalities of the United States government, necessary to the administration of its affairs, and for that reason not liable to taxation by the authority of the state.

The statutes in question are those of 1st March 1862 (12 Stat. at Large 352), and 17th March 1862 (Id. 370). By the act of 1st March, the secretary of the treasury was authorized "to cause to be issued to any public creditor who may be desirous to receive the same, upon requisition of the head of the proper department, in satisfaction of audited and settled demands against the United States, certificates for the whole amount due, or part thereof, not less than $1000; * * * which certificates shall be ·payable in one year from date, or earlier.

at the option of the government, and shall bear interest at the rate of six per centum per annum.", This act is entitled " to authorize the secretary of the treasury to issue certificates of indebtedness to public creditors." It assumes the existence of a creditor, and of an audited demand against the United States. It authorizes a certificate of indebtedness to be given to him, payable in one year from date, or earlier, if he shall be desirous to receive the same. It is a provision for extending for one year the recognised and admitted demand of a public creditor. It is, in no sense, a borrowing of money. The debt already existed, had been audited by the proper bureau, and the arrangement under consideration was for time merely.

The act of 17th March (p. 370) provided, that the secretary of the treasury might issue " certificates of indebtedness, such as are authorized by an act * * * (above referred to), to such creditors as may desire to receive the same, in discharge of checks drawn by disbursing officers upon sums placed to their credit upon the books of the treasurer, upon requisitions of the proper departments, as well as in discharge of audited and settled accounts, as provided by said act." *The latter act possesses the same elements, and no others, than the one before referred to, simply extending the authority to issue the certificates to a different class of creditors, viz., " those who hold checks drawn by disbursing officers."

The secretary is authorized by these acts, in the event that certain public creditors shall desire it, to issue to them certificates that the government is so indebted to them, which certificates, it is enacted, shall bear an interest of six per cent., and shall entitle the government to a credit of one year, or less, at the option of the government.

I will now refer to those statutes which declare that the bonds and other securities of the United States shall

be exempt from state taxation, under which exemption is claimed for their certificates. These declarations commence with the act of 25th February 1862 (12 Stat. at Large, p. 345, § 2), and, so far as I am able to discover, end with the act of 3d March 1865. As we know from historical information, as well as by a reference to the statutes of the United States, the government has been a borrower of money, at intervals, from its organization. But, without going further back, I have now before me the statute of 12th July 1841, authorizing a loan of $12,000,000, and the issuing of stock therefor; the act of 15th April 1842, authorizing an additional loan of $5,000,000, in the same manner; the act of 22d July 1846, authorizing the issue of treasury notes to the extent of $10,000,000, or the issuing of stock in lieu thereof; the act of 28th January 1847, authorizing the issuing of $23,000,000, of treasury notes; the act of 8th February 1861, authorizing the loan of $25,000,000, and the issuing of stock therefor; the act of 2d March 1861, authorizing a like loan of $10,000,000, and the act of 17th July 1861, authorizing the issue of $250,000,000 of treasury notes. Neither of these acts contain the declaration that the securities issued under them should be exempt from state taxation.

The first act in which this provision is found, is that of 25th February 1862 (12 Stat., p. 345, § 2), authorizing the issue of $150,000,000 of United States treasury notes, payable to bearer, at the treasury of the United States, of the denomination of five dollars, and providing that *$50,000,000 should be in lieu of the demand notes authorized by the act of 17th July 1861; [ * 13 providing further that the notes thus issued should be receivable in payment of all taxes, except duties on imports, and should be a legal tender in payment of all public and private debts, " except duties on imports and interest as aforesaid." The next section of the act, in order " to enable the secretary of the treasury to fund

the treasury notes and floating debt of the United States," authorized the issue of bonds (commonly called five-twenties), not exceeding $500,000,000, bearing six per cent. interest. The secretary was further authorized to dispose of such bonds for coin or treasury notes, or notes issued under the provision of this act, and it was then declared, that, "all stocks, bonds and other securities of the United States held by individuals, corporations or associations within the United States, shall be exempt from taxation by or under state authority."

The next provision of this kind is in the act of 3d March 1863 (12 Stat., p. 709), authorizing the secretary of the treasury to borrow $600,000,000 on bonds of the United States, and to issue $400,000,000 of "treasury notes" bearing six per cent. interest, and $150,000,000 of "United States notes," without interest, which shall be legal tenders; "and all the bonds and treasury notes or United States notes issued under the provisions of this act, shall be exempt from taxation by or under state or municipal authority."

The next declaration of exemption is found in the act of 3d March 1864 (13 Stat., p. 13), authorizing the issue of $200,000,000 of five-forty bonds, bearing an interest of five per cent., where it is declared, that "all bonds issued under this act shall be exempt from taxation by or under state or municipal authority." And again, on the 30th of June 1864 (13 Stat., p. 218), the secretary was authorized to borrow $400,000,000 ; to issue therefor bonds bearing an interest of six per cent.; and it was declared, that "all bonds, treasury notes and other obligations of the United States, shall be exempt from taxation by or under state or municipal authority." *And again, by the act of 28th January 1865, the act last mentioned was amended, by authorizing, in lieu of the bonds authorized by the first section of that act, treasury notes of the description

authorized in the second section thereof; and, after making certain provisions for the disposal of the same, it was enacted that "such notes shall be exempt from taxation by or under state or municipal authority."

The only remaining declaration is found in the act of 3d March 1865, by which the secretary was authorized to borrow $600,000,000, and to issue therefor bonds or treasury notes, in such form as he may prescribe, bearing an interest not exceeding six per cent. The second section prescribes the manner in which the "bonds or other obligations issued under this act" shall be disposed of, and concludes in these words: "And all bonds or other obligations issued under this act shall be exempt from taxation by or under state or municipal authority."

Before commenting upon these statutes, a reference to the principles upon which the bonds of the United States have been adjudged to be exempt from state taxation, will be advantageous. *McCulloch* v. *State of Maryland* (4 Wheat. 316) is among the earliest on the subject. The supreme court of the United States there decided, that congress had the power to incorporate an United States bank; that the bank had the constitutional right to establish its branches of discount and deposit within any state; that the taxing such branch office by a state was retarding and burdening the operations of law passed to carry into effect the powers of the government, and, therefore, unconstitutional. The bank and its branches are held to be "an instrument employed by the government in the execution of its powers," and no more liable to taxation than the mail, the mint, the custom-house papers or judicial process of the United States; that the tax was "upon the operation of an instrument employed by the government of the Union to carry its powers into execution." It was expressly stated (p. 436): "This opinion does not deprive the states of any resources which they origin-

15

\* 15 ] ally possessed. It does not extend to a tax paid *by the real property of the bank, in common with the other real property within the state, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the state. But this is a tax on the operations of the bank, and is, consequently, a tax on the operations of an instrument employed by the government of the Union to carry its powers into execution." In *Osborn* v. *United States Bank* (9 Wheat. 738), the supreme court of the United States was asked to reconsider its opinion in the case of *McCulloch* v. *State of Maryland* (*supra*), so far as it decided that the states had no rightful power to tax the Bank of the United States. Upon such reconsideration, the former decision was sustained, and upon the same general grounds as before set forth.

In *Weston* v. *City Council of Charleston* (2 Peters 449), the city of Charleston had imposed a direct tax of twenty-five per cent. upon the hundred dollars, on the six and seven per cent. stock of the United States. An injunction was obtained against its collection, and the question of the legality of the tax was presented to the supreme court of the United States. The court held the tax to be unconstitutional, saying "the tax on government stock is thought by this court to be a tax on the contract, a tax on the power to borrow money on the credit of the United States, and consequently to be repugnant to the constitution."

In *Dobbins* v. *Commissioners of Erie County* (16 Peters 435), the plaintiff was assessed by the state authorities upon his office of captain of a revenue cutter of the United States, and the question was submitted to the court upon the legality of such taxation. The statute of Pennsylvania authorized an assessment "upon all offices and posts of profit." The court held the taxation to be illegal, upon the ground, that the officer,

like the vessel he commanded, was "a means to carry into effect the object of the government," and no more liable to taxation than the vessel.

In the *Bank of Commerce* v. *New York City* (2 Black 620), the doctrine of *Weston* v. *City of Charleston* was *reiterated and affirmed, and it was held, that "a state tax on the loans of the federal govern- [ * 16 ment is a restriction upon the constitutional power of the United States to borrow money," and thus unconstitutional.

It is evident, from these cases, that a stock or bond of the United States, issued upon a loan of money to the government, is none the more exempt from taxation, on account of a declaration to that effect in the act of congress authorizing the issue. The exemption is constitutional and not legislative; whatever the constitution exempts is exempt, although the act of congress is silent upon that point. Whatever the constitution does not make exempt, it is beyond the power of congress to exempt, however numerous or explicit may be its declarations. Thus, the stocks declared to be exempt in *Weston* v. *City of Charleston* contained no express clause of exemption. The same is true of the stocks which are the subject of inquiry in what are called the tax cases. (*People* v. *Commissioners of Taxes*, 23 N. Y. 197 ; 2 Black 620.) So, of the United States Bank and its branches, and so, of the salary of the revenue officer. In each case, the exemption is placed upon the express ground, that the subject taxed was a means or power of the United States, necessary or useful in carrying on the operations of the government. Such means or instruments cannot be taxed, not because congress declares that they shall not be taxed, but because they are parts of the operations of the government, which the constitution declares must not be burdened or impeded. The large loans authorized by congress, by three several laws, during the year 1861, are none of them in terms

37 N. Y.—2                                    17

exempted from state taxation. They are, however, as effectually shielded by the constitution, as if the strongest words had been employed to announce such exemption. Congress may determine what are the suitable means to carry on the government, and, when so declared, whether in the form of a bank, a mail, or a loan of money, such means, *ipso facto*, are exempt from taxation. On the other hand, it is plainly beyond the power of congress to exempt from taxation any subject or matter within the territory of a state; *that does not come within the principle of the exemption as I have stated it.

In the language of Judge WAYNE, in *Dobbins* v. *Commissioners of Erie County* (*supra*), in reference to the powers of the state, "Taxation is a sacred right, essential to the existence of government, an incident of sovereignty. The right of legislation is co-extensive with the incident, to attach it upon all persons and property within the jurisdiction of a state. But in our system there are limitations upon that right. There is a concurrent right of legislation in the states and in the United States, except as both are restrained by the constitution of the United States. Both are restrained by the express prohibitions on the subject, and the states, by such as are necessarily implied, when the exercise of a right by a state conflicts with the execution of another sovereign power delegated to the United States. * * * Taxation is a sovereign power in a state, but the collection of revenue upon imported goods, and the regulation of commerce, are also sovereign powers in the United States." "It is so ample, that it may be exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it." "There is no limit in the exercise of the right, no guard against the abuse of power, but in the structure of the government, and the discretion of the representatives of the people." "It is not con-

18

fined to the people and property of the state; it may be exercised upon every object brought within its jurisdiction." (Penrose, arguendo, p. 438, citing numerous cases.) It is only when a subject is within the express prohibition of the constitution of the United States or when it is a means of carrying on that government, that it can be relieved from its obligation to bear its portion of state taxation. I look upon the congressional declaration of exemption as of no legal effect, but doubtless of service in carrying, upon the face of the authority to borrow, an evidence of exemption, which, with the uninformed or unreflecting, would give greater facility in obtaining the desired loans.

Nor do I consider it by any means certain, that the declaration of exemption was intended to apply to the certificates in *question. The very frequency of its repetition, and the generality of [ * 18 its terms, afford evidence to the contrary. Thus, in the act of 25th February 1862, authorizing the issue of $150,000,000 of treasury notes, and of $500,000,000 of bonds to fund the treasury notes, it is declared, that "all stocks, bonds, and other securities of the United States, held by individuals, corporations or associations, within the United States, shall be exempt from taxation by or under state authority." This is claimed to cover the certificates now under consideration, although they were issued afterwards. Upon the same argument, however, it would protect all the bonds and security of every kind afterwards provided for by congress. Why, then, should the six separate declarations of exemption which I have quoted, have been made in the acts of congress? Upon this construction, they are simply absurd; while, upon the legal principle that, although general terms are used in a contract or a statute, they are to be restricted in their application to the subject-matter in hand, the repetition is sensible and intelligible.

This idea is sustained by the difference of language in the different statutes. Thus, the language last quoted is general, while in the act of 3d March 1863, it is declared, that "the bonds, treasury notes, and United States notes issued under the provisions of this act," shall be exempt, limiting the exemption to the issues then authorized. So, in the acts of 3d March 1864, of 28th January 1865, and of 3d March 1865, the exemption is confined to "all bonds issued under this act," or equivalent words; while in the act of 3d June 1864, the language includes all bonds, treasury notes, and other obligations of the United States. I think, this language is to be applied, in each case, to the issues authorized by the acts in which it is found.

It will be observed, that the act authorizing the issue of the certificates now under consideration, contains no declaration of exemption, and unless they are to be exempt, upon the ground that they are the means and instruments of the general government, necessary to its operations, they must come within the general scope of state taxation. I do not think they are such.

*The money or materials, or whatever may have been the original consideration of the indebtedness in question, had been previously received by the government. The certificates were not issued to obtain either money or materials, but were to be issued as a means of payment at a subsequent day, for what had already been received and spent by the government. They cannot come under the head of "borrowing money," which was the theory upon which the constitutional exemption was declared by the supreme court of the United States, nor can they be deemed a means necessary to the operations of the government, like ships, a bank, the mail, the customhouse, and the like. They are simply claims of a creditor against a debtor, and against a debtor who is not liable to prosecution, and who could not, like an

individual, be embarrassed by a seizure of his property. The certificates do not show upon their face what was the consideration of the original indebtedness, nor is there any evidence upon that subject. They simply show an indebtedness which has been audited and allowed, and which the government has promised to pay.

This court should acquiesce fully in the decisions of the supreme court of the United States upon questions arising under the laws and constitution of the United States. While I do this cheerfully, I am of the opinion, that exemptions like those under consideration should not be extended, but should be limited to the cases decided, or to those falling necessarily within their principles. That court has decided that to tax a loan of the United States is an interference with the constitutional power of the federal government to borrow money, and therefore illegal. In this we acquiesce. It has also decided, that the means and instruments of the government necessary for carrying on its operations cannot be impeded or burdened by state taxation. Upon this principle, the United States Bank, the custom-house, its vessels, munitions of war, post-offices and the immediate property or functions of that government, cannot be taxed by the states. It has never been decided, however, that a certificate or statement of a past indebtedness, which is property in the hands of a *citizen, and in relation to which there is no evidence of the original consideration, and [ * 20 which has never been declared by congress to be such, is to be deemed, as a matter of law, a necessary instrumentality of the government, and thus exempt from taxation. There is no particular virtue in the written statement or certificate. It simply affords ready proof of the debt, but does not alter its character. And yet it would hardly be contended, that if the government had, years before, purchased property of an individual,

21

for which it yet owed the purchase-money, but had given no certificate or evidence of the debt, that this should not, for the purposes of taxation, be deemed a part of the estate or effects of the seller, and liable to taxation as much as if the purchase had been made and the money owed by an individual. The present case is, in legal effect, the same. I see no reasonable ground upon which the exemption under consideration can be claimed; and, considering the enormous taxation to which the people of this state are subject and must continue to be subjected, it would be unwise, if we could do so, to exempt from its power of taxation any property upon which it has a legal hold. The courts have no such power; their duty is merely to declare the law.

In my opinion, the general term was right in holding these certificates to be liable to taxation, and their judgment should be affirmed.

Judgment affirmed.[2]

[2] To review this decision, a writ of error was sued out from the supreme court of the United States, where the judgment of the court of appeals was reversed, the opinion of the court being delivered by CHASE, C. J., *nemine contradicente:* 7 Wall. 16. The court holding that the certificates in question were not taxable by the states.