Nicholson, C. J.,
delivered the following opinion.
These cases involve the constitutional power of the Legislature to impose a tax upon lawyers, for the privilege of practicing law in the several courts in which they had been enrolled as attorneys.
The act declares that the practice of law is a privilege, and prohibits the exercise of the privilege without • first obtaining a license from the County Court Clerk, and paying the privilege tax.
It is conceded, that the constitution expressly authorizes the legislature to tax privileges in such manner as they may deem proper. It is further conceded, that the practice of the law is a privilege, but the question is, whether it is such a privilege as is subject to the taxing power? The. lawyer practices his profession .by virtue of the judgment of two judges, who adjudicate the questions as to his qualifications, as prescribed by the legislature, and determine upon the evidence furnished to them; that he is twenty-one years of age; that he is of good moral character, and that he has the requisite learning in the law to be *631 come a practitioner. Upon producing this judgment, in any of the courts of the State, the presiding judge or judges enter his name to be enrolled as an attorney of the court, and from that time he becomes an officer of such court, having the privilege or right to practice in such court, but subject to the rules and orders for the conduct of attorneys prescribed by the court.
It is said by a majority of the United States Supreme Court, in the case of exparte Garland, 4 Wall., 378, that “the order of admission is the judgment of the Court, that the parties possess the requisite qualifications as attorneys and counsellors, and are entitled to appear as such and conduct causes therein. From its entry the parties become officers of the court, and are responsible to it for professional misconduct.
They hold their office during good behavior, and can only be deprived of it for misconduct, ascertained and declared by the judgment of the court, after opportunity to be- heard has been afforded. Their admission or exclusion is not the exercise of a mere ministerial power, it is the exercise of judicial power. * * * The attorney and counsellor being, by the solemn judicial act of the court, clothed with his office, does not hold it as a mere matter of grace and favor.
The right which it confers on him to appear for suitors, and to argue causes, is something more than a mere indulgence revocable at the pleasure of the court, or at the command of the Legislature. It is a right of which he can only be deprived by the *632 judgment of the court, for moral or professional deficiency.”
In the same case, the minority of the Court, consisting of Justices Miller, Swayne, Davis, and Chief Justice Chase, in reference to attorneys, say: “They are as essential to the successful working of the courts as clerks, sheriffs, and marshals, and pérhaps as the judges themselves, since no instance is known of a court of law without a bar.”
It is therefore settled by the unanimous judgment of the United States Supreme Court, that lawyers admitted to practice in the courts by the orders of the presiding judge or judges, become thereby officers of the courts, and necessary constituent parts thereof; and the right thus acquired, can not be revoked by the mere .pleasure of the court, or at the command of the Legislature.
At the time the act of the Legislature in question was passed, the defendant was a practicing lawyer, admitted and enrolled as such by the order of the presiding judge, and therefore entitled to exercise the right or privilege of such officer of the court. Upon the authority just referred to, his right as such attorney and officer could not be revoked by the Legislature, nor by the court except for professional misconduct. It follows that so much of the act as assumes the power to prohibit the right of practicing law by the defendant without procuring a new license, was unconstitutional and void.
• But this does not settle the question as to the power of the Legislature to impose a tax upon the *633 privilege of practicing law. It only establishes, that as the privilege already existed, and was of a character not to be revoked by the Legislature, it could not be prohibited for the mere purpose of taxing it as a privilege. If, however, it was a privilege under the Constitution, the tax might be imposed without such prohibition by a law for that purpose. The present law imposes the tax for the new privilege created for that purpose, and not on the existing privilege.
The power of legislation, and consequently of taxation, operates on all persons and property belonging to the body politic. This is an original principle which has its foundation in society itself. It is granted by all for the benefit of all. It resides in government as part of itself, and need not be reserved when property of any descripition, or the right to use it in any manner, is granted to individuals or corporate bodies. However absolute the right of an individual may be, it is still in the nature of that right that it must bear a portion of the public burdens, and that portion must .be determined by the Legislature : 4 Peters, 553.
We have seen that the right to practice law, after the privilege is adjudged as provided by law, is absolute and can not be revoked by the Legislature or the Court itself, except for professional misconduct. But unless there is something in the privilege, by which the State has relinquished the right of taxation, it is to be presumed that it is accepted, subject to the power of the State to impose upon its exercise a share of .the public burdens, by way of taxation.
*634 The rights of a corporation to exercise its franchises and privileges is absolute, but if the charter contains no express exemption from taxation, the power to tax the privilege exists. In the case of Providence Bank v. Billings, 4 Peters, 562, it is said: “It would seem that the relinquishment of such a power is never to be assumed. We will not say that a State may not relinquish it, that a consideration sufficiently valuable to induce a party’s release of it may not exist; but, as the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon it does not appear.”
It was provided in the charter of the Union Bank, granted in 1832, that in consideration of the privileges granted, the bank agreed- to pay to the State annually, one-half of one per cent, on the amount of the capital stock paid in. In the case of the Union Bank v. The State, it was held that this provision in the charter constituted a contract between the State and the bank, and that the State could not afterward impose an additional tax upon the capital stock, without impairing the obligation of that contract. In making this decision, however, the Court distinctly concede the power of the Legislature to tax a banking corporation, unless the charter contains a stipulation exempting it from taxation.
The privilege of the lawyer secures to him an absolute vested right to practice law during good behavior, but we can discover nothing in the terms of *635 the statutes which prescribe his qualifications, nor in the judgment of the Court which makes the privilege an absolute right, that can be construed into an exemption from the power of taxation. ' It is true the privilege is granted as well for the public good, as for the individual benefit of the lawyer. . But the same may be said of the privileges granted to private corporations, the consideration of the public good as well as the benefit of the corporators enters into the contract. While, therefore, we hold that the privilege of the lawyer is a vested right which can not be revoked by the Legislature, it stands on the same footing, so far as this view of the question is concerned, with the absolute rights resting on contracts, and is alike subject to the taxing power of the State.
But we have seen, that where the lawyer is adjudged qualified by two judges, and is admitted to practice in the courts, he became an officer thereof, and entitled to hold his office during good behavior. The question arises, does the fact that the lawyer is an officer of the court exempt his office, or, which is the same thing, his ’ right to practice in the courts, from the general- taxing power of the Legislature? This question reaches to the foundation of republican government. It is a fundamental principle, that it is essential to the maintenance of republican government, that its powers should be distributed into legislative, judicial and executive departments, and that in its administration these departments should be separate and independent in their respective spheres. Hence, it is provided in the Constitution of our State, that “the *636 powers of the government shall be divided into three distinct departments; the legislative, executive and judicial.”
When we are called upon to construe that clause in the Constitution, which confers upon the Legislature the power to tax “ privileges,” in order to ascertain the intention of the framers of the Constitution, we are bound to give such construction as will harmonize with the several provisions which may involve the same question. We not only find the provision, that the powers of these departments are “ distinct,” but we find it provided, that “ all courts shall be open,” and that “ in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel.” .It thus appears that the Constitution recognizes the lawyer as an essential agent in judicial proceedings. We must presume, therefore, that when the Convention provided in the Constitution, that the Legislature might impose taxes on “privileges,” they did not intend to recognize in that department of the government the exercise of a power which might involve the judicial department in 'the legitimate exercise of its distinct powers. If it be true, as held by the majority of the United States Supreme Court, in the case of Garland, ex parte, that the right of a lawyer, conferred by the solemn judicial act of the court, is such that he can not be deprived of it at the pleasure of the court, or at the command of the Legislature; or if, as held by the minority of the Court in that case, lawyers “ are as essential to the successful working of the courts, as the clerks, sheriffs, and mar *637 shals, and perhaps as the judges themselves”;- it is difficult to see how the Legislature could impose a tax upon the office or right of the lawyer, without thereby involving the very existence of the judicial department.
It must be borne in mind, that this is simply a question of power as between two co-ordinate and independent departments of the government.
If the power exists at all, it may be exercised at the discretion of ' the Legislature, by the express language of the Constitution. Hence, although the- tax imposed by the present statute, may not' be so oppressive as to interfere practically with the successful working of the courts, yet if the power be conceded, it is conceding that the Legislature possesses a power, which may be exercised, even to the closing of the courts.
The true safety of the government consists in arresting the first step toward the invasion of one department by another, by the assumption of unconstitutional powers. If the Legislature has the power to convert the office of an attorney into a taxable -privilege, by prohibiting its exercise without taking out an annual license, why may they not by the same process, convert the offices of the clerks,' sheriffs, and marshals, and, in fact, of the judges themseves, into taxable privileges, and require them all to -pay taxes on their offices, or cease to hold and exercise their functions ?
In principle no distinction can be drawn. The principle which underlies and sustains our conclusion *638 is the same on which the Supreme Court of the United States has uniformly held, that the States can not impose taxes upon the offices, agencies, or instrumentalities of the Federal Government: Gobbins v. Erie County, 16 Peters, 435. The two governments being supreme and independent in their respective spheres, the Constitution of the United States which is the supreme law, forbids the invasion by either, of the powers of the other, by imposing taxes on their respective officers or agents. For the same reason, the three departments of the State Government, being distinct and independent in their respective spheres, the Constitution forbids the invasion of. the province of one, by the exercise of their respective powers in violation of the powers of the others. Such we hold to be the character of the act of the Legislature, which undertakes to impose taxes on the privileges or rights of lawyers, who are officers of the courts, and therefore, we declare the act unconstitutional and void.
It is said, however, that it is settled that taxes can be constitutionally levied upon the right to sue in the courts, and therefore, it is argued that the privilege of practicing law in the courts is also constitutional. But in taxing law suits, the Legislature does not assume to interfere with the rights or privileges of officers of the courts. The instituting of suits is not a privilege merely, but it is an absolute right which is common to all citizens, it is a species of property as held by this Court in the case of Harrison & Pepper v. Willis, 7 Heis., 44. Besides, as said in the opinion in that ease, “the tax is im *639 posed on the unsuccessful party/5 who, in the opinion of the tribunal adjudicating the case is in the wrong, “who has not been injured in his lands, goods, or reputation/5 but who has wronged his adversary, and it becomes therefore in this view, not a tax upon the judicial remedy, but a tax upon unrighteous litigation. It would seem to follow conclusively, that the tax or penalty imposed upon the unsuccessful party, for wrongfully contesting the rights of his adversary in court, can furnish no precedent or authority for the constitutionality of a tax imposed upon an officer of court, for exercising a right adjudged to belong to him. The tax upon the unsuccessful party in litigation, is so far from being the exercise of a power destructive of the courts, it is a protection to those who have real claims, but a punishment to those who use the courts to avoid just claims.
Our conclusion is, that the act taxing the right of the lawyer to appear in court for the exercise of his right, is unconstitutional and void.
Opinion by
Freeman, J.
By the act of 1867-8, c. 129, s. 5, all lawyers setting themselves up as practicing attorneys, who have been practicing five years, shall pay a privilege tax of $15. By other sections of the Code, penalties of double the amount of the privilege tax are imposed for exercising any privilege without obtaining a license as required by law. This renders it unlawful for any man to exercise any privilege declared taxable, without payment of the tax imposed for grant of the pri *640 vilege, and obtaining a license from the Clerk of the County Court. These privileges are granted annually on payment of the tax on the same, and without such license, no party can lawfully exercise the privilege or engage in the occupation taxed. In other words, the occupation is forbidden, and in the case of a lawyer of five years standing, notwithstanding his license by the proper authorities, acting according to law, he forfeits his rights, and is forbidden to follow his profession. He is simply deprived of and forfeits his right thus obtained, and that without crime or judicial investigation. The question is, whether this can be sustained as a constitutional right on the part of the State, or whether such a law is in accordance with our own or the Federal Constitution?
The question is not whether the State may not declare the practice of the profession a privilege, and require in the future, all who desire to engage in it to pay a license tax, either on receiving such license, or to pay an annual tax on the same, but whether the State can declare that a privilege, which she has already granted, and revoke the license obtained under her authority, unless the party shall pay for and obtain an annual license under the law we are considering?
We hold this can not be done without impairing the obligation of a contract, and that is to deprive a man of a right granted by the State, based on a valuable consideration paid by the lawyer in more or less toil and labor, given to the acquirement of the requisite qualifications to obtain his license.
In the case ex parte Garland, 4 Wall., 374, et seq, *641 the character of a lawyer’s right to practice his profession, to appear for clients and argue causes, was well stated. It was substantially held that this was a valuable right, one acquired from the proper authorities, of which he could not be deprived except for misconduct, and by the judgment of a court. That this right was something more than an indulgence, revocable at the pleasure of the court admitting the party to the bar, or even at the command of the Legislature. In that celebrated case it was decided, that to impose an oath on an attorney, which he could not take, and require him after he had been admitted as an attorney to take such an oath, or not be permitted to exercise the functions of his profession, was in the nature of attainder, having all the elements of a Bill of Pains and Penalties, • as once known in practice in the jurisprudence of England, and that no such punishment could be inflicted under the Constitution of the United States. This puts the right on high ground, but not higher than the truth and right of the case demands. These principles being conceded, then we assume, that the lawyer holds his right by virtue of a grant from the State, which grant is irrevocable, except upon the conditions implied by its nature, that the party shall not be guilty of conduct unworthy of the trust reposed in him. Should he be guilty of such conduct, then when the fact is judicially ascertained according to the forms of law, he may be declared to have forfeited his right, but not otherwise.
It is ingeniously argued, however, that this valua *642 ble right granted by the State, is no more than a grant of land or other property from the State, or the grant of a franchise to a corporation, and that these are all taxable as property, and not protected from this burden by reason of the grant. This we concede to its fullest extent has been long settled, the case of Providence Bank v. Billings, being perhaps the leading case on the subject. But the fallacy that underlies this argument is, in not distinguishing between taxation of a thing or right as property at its value, and making a privilege which can only be enjoyed by license, and in effect depriving the party of the granted privilege, unless he shall purchase it again from the State, and under our system of laws buy it every year. This is a very different thing from taxing a property or right granted by the State as property, is in effect a revocation of the grant except upon the discharge of a new burden imposed, and which was not in the contract at the time, nor part of the grant.
We may concede that the right as a valuable property, somewhat in the nature of a franchise may be taxed as property, as other valuable rights, such as the franchise of a bank or other corporation, but we deny that the right can be taken away or the grant revoked by the Legislature, except as we have indicated for misconduct judicially ascertained. This was held in a late case by the Supreme Court of "Virginia: Ould & Carrington v. The City of Richmond, 23 Gratt, 464, Am. Rep., vol. 14, 139, 40 et seq. In that case, while it was held that the power of *643 taxation “extended to every trade or occupation, to every object of industry, use or enjoyment, to every species of profession,” and therefore the lawyer’s right or privilege might be taxed as property according to its value, and the limitation upon the exercise of this right by the Legislature and the security against its abuse, in the language of Chief Justice Marshall, was the influence of the constituent over the representative, yet the Court say “lawyers are not named among those to whom license may be granted or refused and taxed. They could not be included in a provision to authorize .a tax upon an occupation or business to which the council might grant or refuse a -license, for a lawyer has obtained his license from the State, and it is not in the power of a municipality to deprive him of this right.” This, it is true, was a tax imposed by a municipality, but in pursuance of the fullest powers granted by the Legislature over all legitimate objects of taxation. The Court adds substantially, “that while the lawyer could not be deprived of his right, that it was, however, a valuable civil right and privilege, to which are attached valuable immunities and pecuniary advantages, and is a fair subject of taxation by the State, or by any municipal corporation where he resides and enjoys the privilege. It is a vested civil right, yet it is as properly a legitimate subject of taxation as property to which a man has a vested right.”
But to recur to the case of a franchise granted as law, suppose the State should assume to revoke the grant and require that every corporation should repur *644 chase its franchise by obtaining a license for the privilege, or that every grantee of land from the State., should obtain a new grant annually from the State in order to the enjoyment of his lands, and impose a penalty for the exercise of the franchise in the one case, or the beneficial use of the land in the other, would any man hold that this was not a violation of the Constitution of the United States ? This would certainly be to impair the obligation of the contract in both cases, as well settled principles, in fact, would be to destroy the contract, and arbitrarily make a new one. This, we think, is precisely the case before us. The Legislature by general law authorized the grant of a license to practice the profession of the law in all the courts of law and equity in the State, to parties who might fit themselves for it by proper professional learning, and give the evidence of good moral character, as required by our statutes. The attainment of proper qualifications and proficiency in the learning of the law, as contemplated by our law, is a work of time and toil. This time might be otherwise profitably employed in other pursuits. The young aspirant foregoes other advantages and with more or less expense he gives himself to the acquirement of the required qualifications. He satisfies the proper authority of his learning, complies with the terms prescribed by the Legislature, and thereupon the State grants him the right to the exercise of his professional skill and use of his professional knowledge. This .is henceforward by authority of the State, to be his vocation or calling — the means of his livelihood, *645 he fondly hopes perhaps of great emoluments, and it anay be of high position and honor. He has fairly earned his right to the grant of this privilege, and the State has through her authorized officers admitted the fact, and conferred it upon him by a grant of license as an attorney and counsellor at law. Can he be deprived of this valuable right except for misconduct? We hold not, unless the State can not. be bound by her grants, but has the right to assume them at her pleasure; not unless the State is not bound by the obligation of a contract, (for this has all the elements of one, we believe, more than the celebrated case of Woodward v. Dartmouth College,) and may disregard hers at her pleasure, and impose another: may prohibit the enjoyment of contracted rights granted by penalties that forbid their exercise. This can not be done in our opinion while the Constitution remains that forbids any “State from impairing the obligation ■of a contract.” If the act now under consideration ■does not impair the obligation of the contract found ■on the face of every lawyer’s license obtained before its enactment, then we are at a loss to see what could do it. The right granted by the State is revoked and is as effectually destroyed as if the Legislature should say, that any man who had been practicing law for five years, should no longer enjoy that right, or exercise the privilege granted by his license. In fact, under this act, the lawyer included in its provisions would henceforward not practice his profession by virtue of his original license, but under the license granted by the County Court Clerk of the *646 State. If he seeks to enjoy his right under the license granted by the judges who have signed it, and under which he formerly exercised the privilege, he is forbidden to do so, and must annually obtain a license from the County Court Clerk, or his law license is so much waste paper • to him. We do not think such power can be exercised by the Legislature, and therefore the act is to be held void, as unauthorized by the Constitution of the United States and of our own State.
The argument based on the idea that this is a tax on a lawyer’s privilege like that imposed on the merchant, we think overlooks one important and essential element of difference in the two cases. In the case of the merchants’ tax, it is paid on granting the privilege and is the consideration for the license given him. In the case before us, a license has been granted upon good and sufficient consideration in accordance with law. The question in the case of the lawyer is, whether after having obtained the grant, he can be again called on to be relicensed, and required to pay again for that which he already holds from the State, or be deprived of its enjoyment. The cases would be analogous if the State should require every merchant in the State after he had his license paid for, authorizing him to exercise the privilege for a year, again within the year to be relicensed to enjoy the same privilege, and forbid him from exercising it during the year without such new license. This would be to sell a party a privilege and then make it go for nothing, and require him to make a new *647 contract in order to its enjoyment. In %ther words, we think the real question in this case is, whether the Legislature can arbitrarily revoke the license of any lawyer in the State, deprive him of his granted privilege and means of living by his profession, thus annulling the grant, or whether this grant is a contract binding on the State, and as such irrevocable. We hold the last to be the true state of the case, and that the license is a contract which the State can not impair.
It is proper to add, that under this view of the case, the lawyer may be taxed as such, and his right or franchise pay as other valuable property or franchises, its due proportion of the burdens of the State according to its value, to be ascertained in such manner as the Legislature may deem best. In the Virginia case we have cited, the mode adopted was to divide the lawyers into classes and ascertain the value of the profession to each class, and tax it according to such value; while this, may not reach perfect equality, it will so far approximate to it, that there can be no great injustice done — absolute equality has not and never can be attained in fixing the burdens imposed on the citizen, approximative justice is all that can be reached.
The result is, that the lawyer may be taxed, that is, his privilege may be taxed as property, but his license can not be revoked. That this privilege already granted can only be taxed on its value as other property. But that his granted privilege can not be *648 granted in the future, because the effect of this is to revoke thaff already granted.
We need scarcely say that this does not affect in any way, the terms on which the Legislature may grant licenses in the future to persons seeking the privilege.
Opinion by
Turney, J.
In article 11, section 28 of the Constitution, it is provided: “ The Legislature shall have power to tax merchants, peddlers, and privileges, in such manner as they from time to time may direct.” The same provision is contained ' in the Constitution of 1834.
On 13th of March, 1868, the Legislature passed the following statute: “All lawyers who set themselves up as practicing attorneys, and who have been practicing the profession for five years, shall respectively pay a privilege tax of fifteen dollars.”
On 6th of July, 1870, “That the tax on privileges, be and. the same is hereby increased fifty per cent, upon the present basis.”
In the Bill of Bights it is ordained: “That all courts shall be open, and every man for injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay. That in all criminal prosecutions the accused hath the right to be heard by himself and his counsel.” The question to be now determined is, has the Legislature ■under and by authority of the Constitution, the rightful power to pass the statute quoted?
*649 “Privilege is a peculiar benefit or advantage, a right or immunity not enjoyed by others, or by all; special enjoyment of a good, or exemption from an evil, or burden prerogative/ advantage.”
“Privilege among the Romans was something conferred upon an individual by a private law, and hence it denotes some peculiar benefit or advantage, some right or immunity not enjoyed by the world at large.” Deriving our language mainly from the Latin, and in many eases our words being simply anglicisms, used to render them conformable to our pronunciation, we by use of the derivative, are presumed to employ it in the sense given to the mother tongue. Bouvier says: “The word privilege, taken in its active sense, is a particular law or a particular disposition of the law, which grants certain special prerogatives to some persons, contrary to common right. In its passive sense, it is the same prerogative granted by the same particular law.”
The exercise of mental power cannot be a privilege, as it is not derived from any particular law granting special prerogatives contrary to common right, but is a common, universal right, flowing from the general law of nature, vouchsafed to every intelligent being for its advancement and happiness. An opposing idea is contradictory to the revealed account of the origin of mankind, and its preservation for thousands of years since. Such absolute natural right may when necessary to the benefit of the many, or to the protection and support of the government, and when not in contravention of good morals, be abridged by *650 the sovereign power of the government, which is with us the people, and not otherwise. When it is proposed by constitutional provisions to contract the natural or absolute right of the citizen, it must be done in terms of easy and plain interpretation. The language used in the organic law is the language of the people, not technical; used in its most popular sense, and should be strictly construed.
Bouvier defines “a court to be an incorporeal, political being, which requires for its existence, the presence of the judges, or a competent number of them, and a clerk or prothonotary, at the time during which and at the place where it is by law authorized to be held, and the performance of some public act indicative of a design to perform the functions of a court. In another sense, the judges, clerk or prothonotary, counsellors and ministerial officers are said to constitute the court.” ' The several States of the Union, through their Supreme Courts, as well as the Supreme Court of the United States, have declared attorneys and solicitors to be officers of the court. Courts — State and Federal, are the creatures of constitutions. In them are express provisions for the appointment or election of judges and attorney-general.
“A judge is a public officer, lawfully appointed to decide litigated questions according to law.” “ He must not only be impartial, but he must pay a blind obedience to the law whether good or bad, he is bound to declare what the law is, and not to make it; he is not an arbitrator but an interpreter of the law. It is his duty to be patient in the investiga *651 lion of the case, learned in considering it and firm in his judgment. He ought, according to Cicero, never to lose sight that he is a .man, and that he can not exceed the power given him by his commission, that not only power, but public confidence has been given to him, that he ought always seriously to attend not to his wishes but to the requisitions of law, justice and religion.” . “An attorney-general must be learned in the law.” “An attorney at law is an officer in a court of justice, who is employed by a party in a cause to manage the same for him as his advocate.” These were the well established definitions of the office and officers embraced in them, long before the organization of our State or Federal Government, made and announced by the country whence we derive our law, and must be understood to have been used and referred to by the framers of constitutions, in the sense and meaning given to them by the pet) pie from whom we borrowed them, and in our establishment of courts to have embraced lawyers, not only as officers of, but as essential constituents in the machinery of the judiciary. The terms impart the one idea, “ learned in the law,” to be which, practice is absolutely necessary. A court without lawyers would be a ridiculous and empty show, a farce. It would be impossible to have fixed or well defined rules; soon its proceedings and decisions would be a hotchpot of confusion and error, and the provision in the declaration of rights, “That all courts shall be kept open, and evéry man for an injury done him in his lands, goods, person ór reputation, shall have remedy by due course of law, and *652 right and justice administered without sale, denial or delay” — a dead letter. . Confine the definition of court to judge, make it his duty to try all causes, discover and determine all questions arising from the facts, first eliciting the facts' for and by himself, and every appearance of the administration of right and justice is gone. "Without the aid of lawyers, (officers of the court) it would be utterly impossible for any judge or number of judges to pay a blind obedience to law, declare it and not make it, and seriously attend to the requisitions of the law. Without the investigation out of court, and their presentation in court by lawyers, certainly no sane mind would assume to discharge the duties of judge.
The rights of an attorney in his capacity as such, are the rights of the people, involving their lives, liberty and property, necessary to the well being and good order of 'society, and absolutely indispensable to the safety of all well appointed governments.
It is insisted, that by the language in section 28, of article 2, of the Constitution: a power is conferred upon the legislature to tax the practice of law as a privilege. Allowing to the term a more restricted meaning than the one given, and still the clause quoted from, does not grant the authority claimed. The word “privilege” in the sentence has reference and is to be interpreted by the preceding words merchants and peddlers. In Sandman v. Beach, 7 Barn. & Cress., Lord Tenderdon, C. J., delivering the opinion of the Queen’s Bench, said; “It was objected that the plaintiff in this case should not recover, because the con *653 tract for the breach of which the action was brought, was to have been performed on the Sabbath day, and that it could not legally be performed on that day. But upon looking into the statute, 3 Car. 1, c. 1, and 29 Car., 2, c. 7, upon which the objection was founded, we are of the opinion, that this case does not come within them. By the first of these it was enacted, that no carrier with any horse, nor wagonman with any wagon, nor cartman with any cart, nor wainman with any wain, nor drover with any cattle, should by themselves, or any other, travel on the Lord’s day.
“By 29 Car., 2, That no tradesman, workman, laborer, or other person or persons, shall do or exercise any worldly labor, business or work of their ordinary calling upon the. Lord’s day.
“ It was contended that under the words person or persons, the drivers of stage coaches were included. But token general words follow particular ones, the rule is to construe them as applicable to persons ejusdem generis; considering here that by 3 Car., 1, carriers of a certain description are mentioned, and 29 Car., 2, drivers, horse coursers, wagoners, and travellers of a certain description are specially mentioned, we think that the words other person or persons cannot have been used in a sense large enough to include the owner and driver of a stage coach.”
In this case, the clause relied on to sustain the act of the Legislature, specially names the class to be taxed, and the word “privileges” was intended to embrace trades or professions similar in character, and limits the legislative power of taxation to them.
*654 The statute requiring a license, is a police regulation of like nature of others required in the. exercise of all public duty for general good, not confined to any man or class of men, and not in derogation of common right.
The right to practice law is the right of thought and mental labor, common to all, untramelled by constitutional regulations. The statute taxing it is void.
Opinion by
Deaderick, J.
The fifth section of the act of Assembly, passed March 13th, 1868, provides amongst other things, that “all lawyers who set themselves as practicing attorneys, and who shall have been practicing the profession for five years, shall respectively pay a privilege tax of fifteen dollars.” The act further provides that the person so engaged shall obtain an annual license from the Clerk of the County Court, to whom the tax shall be paid: Shank. Stat., 198-9.
The question of the validity of this statute is involved in this case. By the plaintiff in error it is insisted, that the act is unconstitutional, the legislature having under the Constitution of the State, no power to impose' such a tax. On the other hand, it is contended, that the power is conferred by art. 2, s. 28, of the instrument. That section declares that “ all property, real, personal, or mixed, shall be taxed,” allowing the legislature to exempt from taxation such property as may be held by the State, by counties, .cities, or towns, and used exclusively for public or corporation purposes, or such as may be held and *655 used for purposes purely religious, charitable, scientific, literary or educational, etc. It is further declared in said section, that “all property shall be taxed according to its value, that value to be ascertained in such manner the Legislature may direct,” etc., “that taxes shall be equal and uniform throughout the State. No one species of property from which a tax may be collected, shall be taxed higher than any other species of property of the same value. But the Legislature shall have power to tax merchants, peddlers, and privileges, in such manner as they may from time to time direct.”
The manner of imposing taxes on property, real, personal, or mixed, is prescribed in the fundamental law to be according to its value, so that taxes on property shall be equal and uniform throughout the State. But in regard to the taxes on merchants, peddlers, and privileges, the rule of the Constitution is, that the Legislature may tax them “ in such manner as they may from time to time direct.” The distinction between “property” real, personal, or mixed, and “privileges” as the subject of taxation, and as to the rule by which such taxation is to be imposed, is so clearly defined in the language of the Constitution already quoted, that it can hardly be made more plain by interpretation or by authority. This distinction is recognized in the case of Adams v. Mayor and Aldermen of Somerville, 2 Head, 363, where it is said that “an important and fundamental discrimination is made between property and privileges, by the Constitution.” The rule laid down as to the former is, that ‘all prop *656 erty shall be taxed according to its value.’ But the rule as to privileges, is, the discretion of the legislature, the latter to be taxed in such manner as may from time to time be directed.”
Judge McKinney further says, “the principle of taxation applicable to property, is altogether impracticable in regard to privileges. It is obviously necessary and proper that the exercise. of the power to impose a tax, should be left to a sound discretion; because no definite rule based upon a supposed equality of value, can .be prescribed as respects what are denominated privileges:” lb. 366-7.
In Cooley’s Const. Lim., 496, it is said, “that there are some kinds of taxes not usually assessed according to the value of the property, and some which could not be thus assessed. And there is probably no state which does not levy other taxes than those which are imposed upon property. Every burden which the state imposes upon its citizens with a view to a revenue, is levied under the power of taxation, whether imposed under the name of tax or under some other designation. The license fees which are sometimes required to be paid by those who follow employment, are, when for purposes of revenue, taxes.
A privilege has been defined by this Court to be a license or permission upon specified terms, to do that which is in general prohibited: 1 Hum., 98; 3 Heis., 283. This definition would seem to comprehend as amongst privileged employments, the practice of the profession of law.
Our statutes prescribe as a condition upon which *657 anyone shall be allowed to practice law, in the courts of this State — that he shall first obtain a license from two judges, or from any law school in the State, and to entitle him to such license, he shal] obtain from the County Court of the county where he has usually resided, a certificate that he is twenty-one years pf age, and is a man of good moral character; upon these terms and upon taking the prescribed oaths, he is permitted to practice law in the different courts of the state. This license to practice law is to him a privilege not granted to others, and one he ha¿ no right to exercise without complying with the terms specified. In Ex parte Garland, 4 Wall., 378, it is said, the lawyer holds his office during good behavior, and can only be deprived of it for misconduct, ascertained and declared by judgment of the court after opportunity to be heard has been afforded.
In Garland’s case, an effort was made to deprive him of a previously acquired right to practice law, not because of any misconduct against' which he has had an opportunity to defend himself, but by requiring him to take an oath, which he could not take without committing perjury. The court held the act of Congress requiring such oath to be taken by attorneys previously licensed in said court, to be unconstitutional, as partaking of the nature of a bill of pains and penalties. The object of the act was unmistakably to deprive, those of' Garland’s antecedents from the exercise of a right to practice law previously acquired, by annexing to the exercise of the right impossible conditions.
*658 But the question in this case is, not whether the defendant shall be deprived of the right to practice law, by forbidding the exercise of the right, or by annexing conditions impossible of performance, but whether having been licensed and permitted to practice, he may be taxed for the privilege granted by the State. The purpose of the Legislature in the passage of the law was not to interfere with, so as to prevent the exercise of the right, but in the legitimate exercise of the power to levy a tax upon a privilege for the purpose of raising revenue.
Taxes are defined to be burdens or charges imposed by the legislative power upon persons or property, to raise money for public purposes. The power to tax rests upon necessity, and no constitutional government can exist without it. In the case of Jenkins v. Ewin, Nashville, December Term, 1871, it was held by this Court, Nicholson, C. J., delivering the opinion of the Court, that the “ Constitution of the State does not confer upon the Legislature the power of taxation, it passes under the general designation of " legislative power.”
There is no limitation upon the Legislature as to the amownt or objects of taxation, except that found in the restrictions and prohibitions of the Constitution. This power of taxation is so unlimited in force, and pervading in extent when not restrained by the Constitution, that the courts scarcely venture to declare that it is subject to any restrictions, except such as rest in the discretion of the authority which exercises it. It reaches, to every trade and occupation j every *659 object of industry, use or enjoyment; and tbe responsibility of tbe legislator to his constituents, is generally considered a sufficient security against erroneous or oppressive taxation: Cooley’s Const. Lim., 479-80; 1 Am. R., 52; 18 How., 282.
The Constitution of Tennessee confers upon the Legislature the power to tax privileges, as clearly and as distinctly as it confers the power to tax land. If then the right to practice law is a privilege, which I understand the majority of the Court to concede, it would seem to follow conclusively, that the Legislature may impose a tax upon it.
There is no violation of a contract entered into by the State, by the imposition of the tax. The State has conferred a privilege upon which she had the reserved right to impose a tax whenever she saw fit to do so, or whenever it became necessary to raise revenue in. this mode for public purposes. There never was any limitation in the Constitution to such a tax, on the contrary an express authority for it, if authority were needed from that instrument.
If the legislature has the power to tax the lawyer, it may of course adopt measures to enforce the payment of the tax. But it is said, conceding the right to tax; and the right to adopt means of collecting the tax, still, such measures have been adopted by the act, as amount to a denial of the right, if the act is not complied with; as for example, the requirement to take out an annual license upon payment of the tax. This is but a. provision of the law to compel the payment of the tax, and contains no prohibition *660 against the exercise of the right; but construing the law as prohibiting the exercise of the privilege, if the tax is not paid, still, the sole object is to enforce the payment; and if the tax may be rightfully levied, such measures for its collection and to enforce its payment as may be necessary for that purpose may be adopted. And if the legislature may tax the privilege, it may not be lawfully exercised without the payment of the tax, and the legislature may so declare.
In the case already cited in 2 Head, 363, the corporation imposed a double tax for failure to procure license, and the objection was taken that the mode of imposing the tax, as differing from the principle and mode prescribed by the general law. But this Court held that such double tax, might be imposed, and that the rule as to taxation of property and privileges was different, and as to the latter, the legislature may tax in such manner as they may from time to time direct. Admitting lawyers to be a necessary element in any judicial system, the most plausible argument against the legislature to impose the tax, is in my opinion, that which is founded upon the inhibition of one department of the government to interfere with the rights and powers of the other departments.
We are not to presume that a co-ordinate power of the government would abuse its power by imposing a tax upon the lawyer,- that would operate as an inhibition upon the practice of his profession, or that it Would so tax land or other property as to practically destroy its value or confiscate it; nor is it necessary in this case to discuss the question as to how far, *661 if at all, the courts could interfere, if a system of legislation for such purposes and binding to such results, were adopted. Abuses of this character are so improbable that the remedy, then in the hands of the people, in the frequently recurring elections, would be speedily applied.
This Court has therefore upheld the power of the legislature to impose a tax upon suits which may be brought into the courts. This power had been exercised for many years without question, when in a recent case the imposition of the tax was resisted. It would seem that such a tax by the legislature wa*s quite as much an interference with the judicial department of the government as the tax upon lawyers.
I am therefore of opinion, that the act imposing a tax upon lawyers, is not only not prohibited by the Constitution, but is fully authorized by that clause giving the legislature power to tax privileges.
Judge Sneed concurs in the foregoing conclusion.
Nicholson, C. J.,
announced the following as the result of the opinions of the judges.
A majority of the Court hold the act taxing the privilege of practicing law to be unconstitutional; two judges, Turney and Nicholson, holding that the right to practice law is not subject to taxation; two judges, Freeman and McFarland, holding that, even conceding that the legislature may tax the privilege of a lawyer, the present act is unconstitutional, because it requires a new license to be taken out from the Clerk of the *662 County Court, and in connection with the previous laws, makes it unlawful to practice without so doing; two judges, Deaderick and Sneed, holding that the present act is constitutional and valid. Judgment will be entered in the case accordingly.